## THE WABASH RAILROAD COMPANY *v.* BIDDLE.

[No. 3,362. Filed January 25, 1901. Rehearing denied June 21, 1901.]

CONTRIBUTORY NEGLIGENCE.—*Question of Fact.*—*Railroads.*—*Injury at Crossing.*—In an action for injuries at a railroad crossing the findings showed that plaintiff was riding in a covered wagon, the covering extending so far to the front of the wagon that he could not see in the direction of the approaching train, except by partially rising to his feet, leaning forward and extending his head to the front of the cover; that the highway by which plaintiff approached the crossing was in a cut and his view of the railroad was partially obstructed; that he stopped the horses when within sixty or seventy-five feet of the track, and again when within twenty-five feet, and each time arose to his feet and protruded his head to the front of the cover of the wagon and carefully looked in the direction from which the train came, and listened, but did not see nor hear it; that the train was being run at the rate of forty or fifty miles an hour, and no signals of its approach were given. *Held,* that the question as to plaintiff's contributory negligence was properly submitted to the jury. *pp. 162-166.*

TRIAL.—*Verdict.*—*Answers to Interrogatories.*—Answers to interrogatories which are in conflict nullify one another and do not overthrow the general verdict. *p. 164.*

SAME.—*Instructions.*—"*Should*" *and* "*Might.*"—The use of the word "should" instead of "might" in an instruction to the effect that in determining the credibility of a witness the jury should consider his interest, if any, in the result of the suit, and the relation any witness may sustain to the transaction about which he has testified was erroneous. *p. 167.*

From Adams Circuit Court; *D. D. Heller,* Judge.

Action by Henry Biddle against the Wabash Railroad Company for injuries received at a railroad crossing. From a judgment for plaintiff, defendant appeals. *Reversed.*

*W. V. Stuart, E. P. Hammond, D. W. Simms* and *C. O. France,* for appellant.

*L. M. Ninde, H. W. Ninde, D. B. Ninde, L. J.· Ninde* and *Henry Colerick,* for appellee.

COMSTOCK, J.—This was an action commenced in the Allen Circuit Court April 30, 1898, by appellee against appellant, to recover damages for injuries to his person, wagon, and contents, and horses, received the day previous in a collision with one of appellant's passenger trains at a highway crossing in the country a few miles west of Ft. Wayne. Upon change of venue, it was tried in the Adams Circuit Court, and judgment was rendered in favor of the appellee upon the verdict of the jury for $1,250.

The highway where the accident occurred runs north and south. The railroad at the point where it crosses the highway runs north of east. At about 7 o'clock a. m. on April 29, 1898, as the appellee, a man of sixty years of age, was traveling on the highway to the north in a closely covered wagon drawn by two horses and loaded with chickens, butter, eggs, and rags, and just before the hind wheels of his vehicle had cleared the north rail of the track, they were struck by a passenger train coming from the west and running at the speed, as the jury finds, of forty or fifty miles an hour. The wagon and its contents were demolished, the horses slightly injured and the appellee, though receiving no broken or fractured bones or serious flesh wounds, incurred, as was found by the jury, permanent injuries.

No question is made as to the sufficiency of the complaint. It avers that appellant was negligent in failing to give the statutory signals, alleges facts for the purpose of showing the difficulty of seeing or hearing the train, and avers want of contributory negligence upon the part of the appellee.

Wabash R. Co. *v.* Biddle.

With their general verdict, the jury also, in answer to interrogatories submitted by request of the appellant, found specially upon the facts in the case. Before the discharge of the jury, appellant moved the court, in writing, to require the jury to make more specific their answer to each of certain interrogatories. This motion was overruled as a whole, and as to each interrogatory, to each of which rulings appellant excepted. Appellant's motions for judgment on the special findings of the jury, notwithstanding the general verdict, and for a new trial were overruled. Appellant relies for a reversal on the fourth, fifth, and sixth specifications of errors relating to overruling appellant's motion for judgment on the special findings, overruling its motion for a new trial, and sustaining appellee's motion for judgment.

Did the court err in overruling appellant's motion for judgment on the special findings of the jury? One hundred and twenty-eight interrogatories were submitted. These findings show that appellee was riding in a wagon closely covered over the top and at the sides, the covering extending so far to the front of the wagon that he could not see in the direction of the coming train, except by partially rising to his feet, leaning forward and extending his head to the front of the cover. The highway by which appellee approached the railroad crossing was in a cut; on the west side thereof, the side from which the train approached, there was an embankment higher than the highway; on the top of the embankment there was a five-board fence, the boards five inches in width and five inches apart. In passing through this cut, as one nears the crossing, the view toward the railroad was at some points unobstructed, partially at some, and at others wholly obstructed. The railroad consisted of a single track; he was driving gentle horses, and was familiar with the crossing. He stopped his horses when they were within sixty or seventy-five feet of the track. He checked them when they were twenty-five feet from the track; each time he rose to his feet, protruded his head to

the front of the cover of his wagon and carefully looked in the direction from which the train came. At these times he carefully listened for the approaching train, but he did not see nor hear it. His eyesight and hearing were ordinarily good. Appellant's train was being run at the rate of forty or fifty miles an hour; no signals of its approach were given.

Appellant's negligence clearly caused appellee's injury. He was looking and listening for the danger of which the statutory signals, had they been given, would have warned him. While the failure of appellant to give notice of its approaching train could not relieve appellee from exercising care to avoid injury, yet the absence of such warning is a circumstance in determining whether he did exercise the proper degree of care. *Pennsylvania R. Co.* v. *Ogier,* 35 Pa. St. 60, 71; *Cleveland, etc., R. Co.* v. *Harrington,* 131 Ind. 426.

It has been held by our Supreme Court that where there is evidence tending to show that a party injured at a railroad crossing is thrown off his guard by such means as might have such an effect upon an ordinarily prudent person, it is proper to submit the question of contributory negligence to the jury.

Appellee was driving at the rate of three miles an hour. He made two attempts to see and hear the approaching train at the distances from the track heretofore stated. From the point twenty-five feet from, until he reached the track, the findings do not show that he put himself in a position where he could see the train. This time, at the longest, because of the high rate of speed of the train, was but a few seconds. We do not feel warranted in saying as a matter of law that he was guilty of contributory negligence. We have not deemed it necessary to give in this connection a summary of all the findings. They are not all consistent; but when they are in conflict they nullify one another and do not overthrow the general verdict. The negligence of appellant might have had the effect of throwing an ordinarily prudent

person off his guard, in which case it was the province of the jury, under proper instructions of the court, to pass upon his contributory negligence. *Chicago, etc., R. Co.* v. *Hedges,* 105 Ind. 398. When the facts present such a situation that more than one inference may be drawn by men of equal intelligence and prudence, the question of due care is one of fact for the jury and not of law for the court. *Baltimore, etc., R. Co.* v. *Walborn,* 127 Ind. 142, and cases cited; *Cleveland, etc., R. Co.* v. *Harrington,* 131 Ind. 426; *Cincinnati, etc., R. Co.* v. *Grames,* 136 Ind. 39; *Cleveland, etc., R. Co.* v. *Moneyhun,* 146 Ind. 147, 34 L. R. A. 141; *Grand Rapids, etc., R. Co.* v. *Cox,* 8 Ind. App. 29; *Pittsburgh, etc., R. Co.* v. *Burton,* 139 Ind. 357; *French* v. *Taunton Railroad,* 116 Mass. 537; *Missouri, etc., R. Co.* v. *Lee,* 70 Tex. 496, 7 S. W. 857; *Huckshold* v. *St. Louis, etc., R. Co.,* 90 Mo. 548, 2 S. W. 794; *Teipel* v. *Hilsendegen,* 44 Mich. 461, 7 N. W. 82. In the case last cited, Judge Cooley, speaking for the court, says: "If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts."

In *Cleveland, etc., R. Co.* v. *Harrington, supra,* the plaintiff was well acquainted with the crossing, of good sight and hearing. There were four tracks at the crossing, over one of which, as she approached on foot, a freight train was passing north. When at a distance of thirty-seven feet from the track she could see north up the track upon which she was injured 400 feet. At this point she looked, and, seeing no train, continued her course over the track looking in a southwest direction, and was struck and injured by a train from the north. The train was running at a greater rate of speed than was allowed by city ordinance and no bell was being rung. With respect to these facts the court says: "In our opinion the decided weight of authority is that under the facts and circumstances in this case the question of contributory negligence was a question for the jury under proper instructions from the court."

Appellant at the proper time excepted to the third instruction given by the court of its own motion. It is lengthy, and we do not deem it necessary to set out more than the portions objected to. Such parts are as follows: "You are not bound to believe what a witness has said merely because he has sworn to it." Also: "In determining the credibility of a witness you should consider   *   *   *   his interest, if any, in the event of the suit;   *   *   *   the relation any witness may sustain to the transaction about which he has testified;   *   *   *   also, that the greater number of witnesses testifying to the same effect upon any controverted question does not necessarily create a preponderance of evidence." It is insisted by counsel for appellant that the court invaded the province of the jury in informing them as a matter of law that they were not bound to believe what a witness has said merely because he has sworn to it. It is urged too that it was error to tell the jury that in determining the credibility of a witness they should consider his interest, if any, in the event of the suit; the relation he may sustain to the transaction about which he testified; and that the greater number of witnesses testifying to the same effect upon any controverted question does not create a preponderance of the evidence. It is argued that thus to instruct as to the number of witnesses was especially harmful to appellant, because the number of appellant's witnesses upon the controverted questions exceeded that of the appellee. It is further urged that to instruct the jury to consider the relation of a witness to the transaction in determining his credibility tended to discredit the testimony of several of the employes of appellant who gave important evidence in its favor. In these several objections there is much force; but it is unnecessary to pass upon them because appellant's counsel point out a defect on account of which the instruction must, under numerous decisions of our court, be held to be bad viz.: In directing the jury as to the manner of determining the credibility of the witnesses they were told that they *"should"* instead of *might,* consider certains facts

as shown in the parts of instructions set out. The following cases are cited: *Fulwider* v. *Ingels*, 87 Ind. 414; *Woollen* v. *Whitacre*, 91 Ind. 502; *Shorb* v. *Kinzie*, 100 Ind. 429; *Cline* v. *Lindsey*, 110 Ind. 337; *Jones* v. *Casler*, 139 Ind. 382, 47 Am. St. 274; *Durham* v. *Smith*, 120 Ind. 463; *Dodd* v. *Moore*, 91 Ind. 522; *Duvall* v. *Kenton*, 127 Ind. 178; *Newman* v. *Hazelrigg*, 96 Ind. 73; *Hartford* v. *State*, 96 Ind. 461, 49 Am. Rep. 185; *Finch* v. *Bergins*, 89 Ind. 360; *Bird* v. *State*, 107 Ind. 154; *Pennsylvania Co.* v. *Hunsley*, 23 Ind. App. 37, and authorities there cited.

We are not prepared to say from the record that the verdict was right. The instruction is, therefore, presumed to have been harmful, and for this reason the judgment must be reversed. Other questions discussed by appellant's counsel may not arise again and we do not consider them.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

Wiley, J.—I concur in the result reached in the opinion by Comstock, J., but am constrained to dissent from the conclusion that the answers to interrogatories are not in irreconcilable conflict with the general verdict. I think they are, and judgment should be directed for appellant. I will file an opinion later expressing my views.

Henley, J., concurs with Wiley, J.

DISSENTING OPINION, UPON THE PROPOSITION THAT AP-
PELLANT WAS NOT ENTITLED TO JUDGMENT ON
THE ANSWERS TO INTERROGATORIES.

WILEY, J.—At the close of the original opinion, I stated that I concurred in the conclusion reached, but dissented from that part of the opinion holding that the facts specially found were not in irreconcilable conflict with the general verdict. An examination of the record embracing the interrogatories and the answers thereto has led me to the firm conviction that the general verdict and the answers to interrogatories can not stand together. If there is a reported case in this jurisdiction where there is an irreconcilable an-

tagonism between the general verdict and the answers to interrogatories, the record here presents such a case. There is no system of reasoning by which the two can be said to be in harmony. I recognize the rule that the two may conflict, and still the general verdict may stand, and that it is only where the conflict is irreconcilable upon any reasonable hypothesis that the facts specially found will control the general verdict and override it. To my mind that condition exists here, and when that condition does exist, it is the duty of the court to declare the law, and the law says that the general verdict must fall and judgment follow in harmony with the facts specially found. The rule is, and should be adhered to, that if the party in whose favor a general verdict has been returned is not entitled to recover, the court should direct a judgment in favor of his adversary. Litigation should cease when the facts show that the plaintiff can not recover. This, to my mind, is what the record shows in this case, and judgment should have been directed for appellant.

The prevailing opinion does not state all the material facts as found by the jury, and the writer of the opinion so states. To make clear the views I entertain, it will be necessary to state some of the facts specially found, which to my mind show that appellee was guilty of such contributory negligence as to preclude a recovery, and in so doing I may have to restate some of the facts set out in the original opinion. The highway upon which appellee was traveling ran substantially north and south. Appellant's railroad ran northeasterly and southwesterly. The line of the railroad for more than a mile southwesterly of the crossing was straight. For 600 feet southwesterly from the crossing the railroad ran through a cut. At distances of 300 and 500 feet southwesterly from the crossing, the elevation was eight feet and five inches above the track, and this was the greatest elevation. Adjacent to the right of way, and about 1,600 feet southwesterly from the crossing, there was a grove.

Wabash R. Co. *v.* Biddle.

There were no trees or buildings on the right of way south of the track between the highway and the grove. The highway for a distance of thirty feet south of the track was on lower ground than the adjacent right of way. The train that caused the injury was going in a northeasterly direction and appellee was driving to the north. Appellee was in a covered wagon drawn by two horses. The cover was made of canvas and extended at the top and sides twenty inches from the front of the seat on which appellee was sitting. Appellee had driven thirteen miles, having started on his journey at 3 o'clock in the morning. His wagon was loaded with chickens, butter, etc., and weighed 1,000 pounds. The distance from the top of the smoke-stack of the engine to the rails was thirteen feet, and the distance from the top of the cab to the rails was twelve feet. When appellee was sitting on his seat in the wagon, he was prevented by the cover of his wagon from looking to the west and southwest in the direction from which the train was coming and could not while so riding look carefully in such direction without leaning forward and protruding his head to the front of the cover of his wagon. Sixty or seventy-five feet from the crossing, appellee stopped or checked his horses, rose to his feet, protruded his head to the front and looked in the direction the train was coming. When within twenty-five feet of the crossing, he checked the speed of his horses and partially arose from his seat and protruded his head to the front of the cover and looked in the direction from which the train was coming. He did not again, before driving onto the track place himself with reference to the cover of his wagon so that he could carefully look in the direction from which the train was coming. If appellee had stopped his horses when they were within five feet of the track and had placed himself so his sight would not have been obstructed by the cover of his wagon, he could have seen the train from 300 to 500 feet. When his horses were ten feet from the track, if he had stopped them and placed himself so the

cover would not have intercepted his vision, he could have seen the train for a distance of 150 feet. The jury found in answer to six separate interrogatories that when appellee's horses were at points fifty feet, sixty feet, seventy feet, eighty feet, ninety feet and 100 feet south of the railroad track, he could by carefully looking have seen the train 1,600 feet west of the crossing. Or, to put it as found by the jury, he could have seen the train as far as the grove and the grove was 1,600 feet west of the crossing. A person of good eyesight traveling in an open conveyance on the highway could at points 150 and 125 feet south of the track have seen the approaching train as it approached from the southwest a distance of 2,250 feet, and thence continually until the train reached the crossing. Appellee's eyesight and hearing were ordinarily good. For a distance of 150 feet before entering upon the railroad track, appellee was driving at the rate of three miles per hour. His horses were gentle and easily managed. The sun was shining and the weather was good. The crossing was dangerous to persons coming from the south. Appellee for a number of years previous to the accident had frequently passed over the crossing and was familiar with it.

The facts as thus found show as flagrant a want of care and caution on the part of appellee as any reported case that I can now call to mind. For the court to say as a matter of law that a traveler on a public highway approaching a railroad crossing is not guilty of contributory negligence under such facts as the record here discloses is in effect to eliminate the question of contributory negligence as a principle of law from cases of this character. Not only this, but the rule declared in the prevailing opinion is in direct conflict with all the cases of a similar character decided by the Supreme Court, and directly overrules many cases in this court involving the same question. A brief review of some of the leading cases in our own courts will support this position. I will preface a review of the authori-

ties by referring to the wholesome and well defined rule that when a person crossing a railroad track is injured by a collision with a train, the fault is *prima facie* his own, and he must show affirmatively that his fault or negligence did not contribute to the injury before he is entitled to recover. *Aurelius* v. *Lake Erie, etc., R. Co.,* 19 Ind. App. 584, and authorities there cited. *Lake Shore, etc., R. Co.* v. *Boyts,* 16 Ind. App. 640; *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449. Also that where such crossing is extra hazardous on account of obstructions, etc., increased care is imposed upon the traveler. His care in such case is commensurate with the danger; he must assume that there is danger, and act with particular care and prudence upon that assumption. Beach on Contr. Neg. (3rd ed.) §183; *Lake Shore, etc., R. Co.* v. *Boyts, supra; Aurelius* v. *Lake Erie, etc., R. Co., supra; Towers* v. *Lake Erie, etc., R. Co.,* 18 Ind. App. 684. The opinion in the case last cited was written by Comstock, J., and it is proper to say that in that case there was a special verdict.

In *Cones* v. *Cincinnati, etc., R. Co.,* 114 Ind. 328, the deceased was killed at a crossing by a train running at an excessive speed and without giving the required signals. There was a general verdict for the plaintiff, but in answers to interrogatories the jury found that he was familiar with the crossing and that he might, by looking, have discovered the approaching train in time to have avoided the accident. The trial court sustained the defendant's motion for judgment on the ground that the facts specially found showed that the deceased was guilty of contributory negligence, and the Supreme Court affirmed the judgment.

In the case of *Chicago, etc., R. Co.* v. *Hedges,* 118 Ind. 5, appellee's deceased was killed at a crossing. There appellant's train was coming into a station where there was a water tank. There was a main track and two side-tracks. The engine was cut off from the train and with accelerated speed was run to the water tank. The grade was de-

scending and the train was permitted to run down grade following the engine. The deceased saw the engine pass and undertook to cross the track upon which the train was approaching; when within nine feet from the track upon which the train was approaching he could have seen it if he had looked, and thus have avoided the accident. He did not look and was killed. There was a general verdict for the plaintiff, and the company's motion for judgment on the answers to interrogatories was overruled. On appeal the judgment was reversed, and judgment directed for appellant.

In the case of *Cadwallader* v. *Louisville, etc., R. Co.*, 128 Ind. 518, appellant was approaching a railroad crossing with which she was familiar. It was specially found that when she was within twenty feet of the track she had an unobstructed view along the track in the direction from which the train was coming for a distance of 100 feet, and when within ten feet of the track, she had an unobstructed view for a distance of 300 feet and could have seen the approaching train if she had looked. Upon these facts, it was held that she could not recover.

The case of *Oleson* v. *Lake Shore, etc., R. Co.*, 143 Ind. 405, is strongly in point. Appellant was injured at a crossing by an engine coming in contact with the vehicle in which he was riding. One train had just passed and there was a cloud of smoke left from the engine. This smoke obstructed the view in the opposite direction from which the train was coming that injured him. He did not wait until the smoke cleared away, but started to cross. The approaching train did not give any signals, and on account of the smoke he could not see the train until just as his horse was about to go on the track, but he could at that time have seen it. It was held he could not recover.

In *Pittsburgh, etc., R. Co.* v. *Fraze*, 150 Ind. 576, 65 Am. St. 377, in speaking of the duty of a person approaching a crossing, it is said: "It is also established that the law

will assume that such person 'actually saw what he could have seen, if he had looked, and heard what he could have heard, if he had listened'. *Cones* v. *Cincinnati, etc., R. Co.,* 114 Ind. 328; *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449."

In *Towers* v. *Lake Erie, etc., R. Co.,* 18 Ind. App. 684, appellant was familiar with the crossing. By reason of obstructions a train could not be seen on the highway for 500 feet from the track, nor until the railroad was reached. Appellant did not hear any train until he was within fifteen or twenty feet of the track, and, when he did hear it, undertook to cross the track in front of the moving train. The trial court denied him judgment and the action of the trial court was upheld.

*Lake Shore, etc., R. Co.* v. *Boyts,* 16 Ind. App. 640, so far as the facts were concerned, was very like this case. There appellee could not see the train until he was at a point 30 feet from the track. At such point he could have seen the train at a distance of sixty feet from the crossing, and when within twenty feet of the track could have seen it eighty feet. He did not look, but drove onto the track and was injured. This court, following the unbroken line of authorities, held that he could not recover. Judge Robinson, speaking for the court, said: "We think the conclusion necessarily follows from the finding that the appellee was injured because he neglected these precautions which the law required of him, and by reason of that neglect 'the court will adjudge, as a matter of law, that he was guilty of contributory negligence'."

*Aurelius* v. *Lake Erie, etc., R. Co.,* 19 Ind. App. 584, is in line with the rule as declared in this jurisdiction. There appellee was riding in a buggy with a physician and was going with him to get some medicine for some member of her father's family. It was found in the special verdict that they stopped and looked and listened for a train when within 270 feet of the crossing, and again when within sixty-five

feet from the track. At neither of such points could they see or hear an approaching train on account of buildings and other obstructions. It was found that if they had stopped when within twenty-five feet of the crossing they could have seen the train for a distance of 700 or 800 feet. Also, that if they had stopped within twenty feet of the track they could have seen it for a distance of 1,200 feet. But after the stop at sixty-five feet from the track, they did not stop, look, or listen, but drove on in a trot, and injury resulted from a collision with a train. In that case they were also warned of the danger, by a number of persons on the station platform, but paid no heed to such warning. It was ruled that appellant could not recover, as the facts showed she was guilty of contributory negligence. In that case, quoting from *Mann* v. *Belt R. Co.,* 128 Ind. 138, it was said: "When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it must be understood that he must exercise such care as a reasonably prudent person, in the presence of such danger, would exercise to avoid injury." In that case the writer of this opinion speaking for the court said: "In other words, a person approaching a railroad crossing, in order to avoid injury, must exercise continuing care and caution until the danger is past." To emphasize this point, I may add that caution, care, and vigilance must be used under such circumstances until all danger is past, and this condition does not arise or exist until the traveler has passed safely over the crossing.

In *Shirk* v. *Wabash R. Co.,* 14 Ind. App. 126, appellant was about to cross a railroad track at a street crossing in a city. When she was within ten or twelve feet from the track she stopped and looked and listened, but by reason of obstructions she could neither see nor hear the train. She then proceeded to cross, and was injured. When within five feet of the track if she had looked she could have seen

the approaching train, but she did not look at that point. Upon these facts the court denied her a judgment and an affirmance was ordered by this court.

In the case of *Engrer* v. *Ohio, etc., R. Co.,* 142 Ind. 618, the Supreme Court epitomized the rules of law in such cases as the one I am now considering, and laid down seven well settled and clearly defined rules of law in the following language: "The duty and obligation of appellant was fixed by law, and may be summarized as follows: (1) The presence of the railroad which he was about to cross was notice to him of danger. (2) It was his duty to exercise ordinary care and caution in approaching the crossing to avoid injury to himself. (3) It was his bounden duty to listen for approaching trains. (4) It was his duty to look both ways for approaching trains, a sufficient length of time before venturing upon the crossing, to enable him to avoid a collision, if the surroundings are such as to enable him to see an approaching train. (5) If the surroundings were not such as to admit of his seeing both ways until he arrived at a point near the crossing, it was his duty when reaching such point to look both ways for approaching trains. (6) Without regard to the question of the appellee's negligence, the appellant must affirmatively show that he did not contribute to his own injury by neglecting to observe and perform some one, or more of the above enumerated duties, or he can not recover. (7) His injuries were *prima facie* the result of his own negligence; that is to say, where one person is injured by a collision with a train of cars, it is *prima facie* the result of his own negligence and before he can recover, though the railroad company be ever so negligent, he must affirmatively establish that his own negligent failure to perform his duty did not contribute to bring about his own injury."

In the recent case of *Chicago, etc., R. Co.* v. *Thomas,* 155 Ind. 634, it was held that a traveler who attempts to drive over a dangerous railroad crossing without looking for ap-

proaching trains before placing himself in a situation of danger is guilty of contributory negligence as a matter of law.  This is true and so held in that case, though he can not see such train by reason of obstructions without going in advance of his team to look, and he is not excused from taking such precautions by the failure of the persons in charge of the train to give the signals required by statute. '

The case of *Lake Erie, etc., R. Co.* v. *Graver,* 23 Ind. App. 678, is squarely in point here.  In that case appellee was traveling on a highway in a farm wagon.  The facts specially found showed that he was approaching a dangerous railroad crossing; that at several points in the highway from about 300 feet from the crossing he could have seen the approaching train which he knew was about due, by looking through rows of trees in an orchard; that when he got within thirty-five feet of the crossing he had an unobstructed view of the track for 300 feet in the direction from which the train was coming, and also that he could have heard the noise of the train if he had listened.  There was a general verdict for the appellee, and by the general verdict the jury found that he was without fault, and yet this court held that the facts specially found showed that he was guilty of contributory negligence; that such facts were in irreconcilable conflict with the general verdict, and that this precluded his recovery.  But it is unnecessary for me to review other authorities.  It remains only for me to apply the rules of law thus established to the facts in this case.  When so applied I am utterly unable to see how my associates reached the conclusion they did in holding that the appellant was not entitled to judgment on the answers to interrogatories.

The facts which in my judgment preclude a recovery and entitle the appellant to judgment are these:  The crossing was dangerous; the appellant knew it, and was familiar with it.  He was riding in a closed wagon.  His vision was shut out by the side covers which extended twenty inches in front of the front of the seat on which he was riding.

The width of the seat is not found, but I may presume it was of ordinary width. This would place appellant at least twelve to fifteen inches farther back in the wagon, and if he was sitting erect his head would have been about thirty inches back from the front end of the side curtain. Twice he made an effort to look for the train; once when within sixty to seventy-five feet, and again when his horses were twenty-five feet from the crossing. The first time he arose to his feet and protruded his head to the front of the cover; the second time he checked his team, partially arose from the seat, and protruded his head to the front of the cover. He did not again, after checking his team within twenty-five feet of the crossing place himself so that he could see the approaching train, and did not again stop, look, and listen. Twice after that, the jury found, that if he had stopped, placed himself to see, and had looked, he could have seen the train; once when within five feet of the track, he could have seen it from 300 to 500 feet as it approached, and when within ten feet of the track he could have seen it 150 feet. When his horses were at points fifty, sixty, seventy, eighty, ninety and 100 feet from the track, he could, if he had looked, see the train at the grove which was 1,600 feet from the crossing. At points 150 and 125 feet from the track, he could, if he had looked from the cover of his wagon, have seen the train a distance of 2,250 feet. The train was approaching through a cut, the highest point of which was eight feet five inches above the track. The top of the smoke-stack on the engine was thirteen feet above the rails, so that when it was in the cut of the greatest elevation the smoke-stack was nearly five feet above the surface of the ground. The top of the cab was twelve feet above the track rails, and hence protruded nearly four feet above the surface of the highest elevation. It will be observed that at all the points designated, appellee could, by the exercise of reasonable care, have seen the train, if he had placed him-

self in a position to see it. This he failed to do but twice, and then it was not found as a fact that he did not see or hear it.

If a traveler by looking could have seen an approaching train in time to avoid an injury, it will be presumed, in case he is injured by collision, either that he did not look, or if he did look that he did not heed what he saw. *Smith* v. *Wabash R. Co.,* 141 Ind. 92. Such conduct is negligence *per se. Smith* v. *Wabash R. Co., supra.* In this case the jury did find that at several points as he approached the crossing appellee could have seen the train if he had looked, and hence I can presume that when he did look he did see it, but did not heed what he saw. But here we are confronted with the fact that when within ten feet of the track he could have seen the train 150 feet. At the rate of speed appellee was going this would have given him ample time to have stopped, and avoided the injury. At the rate of speed the train was running, and the rate at which he was driving, it is plain to be seen that the train was going about fifteen times as fast as he was. This figures out almost to an exact mathematical conclusion, for if he was ten feet from the track when he could have seen the train 150 feet, at the relative speed each was going, the train would go 150 feet while he was going ten, and hence they collided on the crossing.

In many of the cases which I have reviewed in this opinion, and others, it has been ruled that where a traveler could have seen an approaching train in time to have avoided an injury by looking, he must be adjudged to have been guilty of contributory negligence if he did not look. The courts cannot fix, as a matter of law, just the distance or distances at which a traveler must stop, look and listen, but it is universally held in this jurisdiction, as I have shown by the reported cases, that the duty is a continuing one until the danger is over. And so it has been held to be negligence to pass onto a railroad crossing without looking, where by

Wabash R. Co. v. Biddle.

looking approaching trains could have been seen at varying distances from the track, from five to several hundred feet. I am unable to understand how my associates can reconcile the rule that it is the continuing duty of the traveler to look and listen, with the facts as specially found here, and declare as a matter of law that appellee was not guilty of contributory negligence, for it is found as a fact that at various points as he approached the track he could have seen the train if he had placed himself in a position to see it, and there is no finding that he did not see it. That it was his duty to exercise his faculties vigilantly to see, and thus avoid the collision, there is no question.

It seems to me that the question I have had under consideration is free from doubt. The rule of law here announced is so firmly fixed in our jurisprudence that until the majority opinion in this case went down, it has never been questioned. If the rule adhered to so long is wrong, it should be abrogated; but I do not think it is wrong. On the contrary, it is a rule founded in reason and wise policy. I can not recall a reported case where the facts specially found disclose a more wanton degree of negligence than the facts here cast upon the appellee. He seemed to be oblivious to the impending danger. Securely housed in his wagon, shut out from a view of the surroundings by the cover, he heedlessly and thoughtlessly drove onto a railroad crossing— a place of peril—in front of a rapidly moving train, without exercising the care of an ordinarily prudent person, when he could, by the exercise of such care, have avoided the accident that resulted. And yet my associates say this was not negligence. The Supreme Court have in many like cases said it was negligence, and in some cases the court has gone so far as to say that such facts constituted gross negligence. In every case of like character and similar facts, the Supreme Court have declared as a matter of law that the injured party was precluded from recovering by reason of his own negligence. In every like case and upon similar

facts this court has adhered to the same rule. Why it has been departed from in this case by my associates, I can not understand. This court, under the provisions of the act creating it, is bound by the law as declared by the Supreme Court, and we have no right to depart from it or to declare a different rule of law. By the decision in this case, it is, in effect, declared to be a rule of law that a traveler who is approaching a dangerous crossing with which he is familiar, after he has twice looked for an approaching train, whether he sees it or not, or whether or not he could have seen it, he has discharged his whole duty, and that he may then close his eyes, deaden his hearing, and proceed heedlessly and carelessly onto the crossing, and yet if he is injured by. collision with a train he will be adjudged free from fault or negligence. Such a rule, in my judgment, is indefensible.

The conclusion reached by my associates upon the question I have discussed, while it makes it the law of this case, does not and can not change the rule of law as declared by the Supreme Court, but necessarily injurious results will follow, for it will have a tendency to disturb the profession and create doubt in the minds of lawyers as to the rigidity and prevalence of the rule that has so long prevailed.

The court should have directed a judgment for appellant upon the answers to interrogatories.

Henley, J. I concur in the above opinion.