## VIRGIN v. THE LAKE ERIE AND WESTERN RAILROAD COMPANY ET AL.

[No. 7,886.    Filed April 18, 1913.    Rehearing denied June 25, 1913.
Transfer denied December 18, 1913.]

1. TRIAL.—*Instructions.*—Instructions should correctly inform the jury as to the law applicable to the case, and leave the jury free to determine the facts from the evidence on all questions where the evidence is conflicting, or where the facts, though undisputed, are of such character that reasonable minds might draw different conclusions therefrom.    p. 221.

2. RAILROADS.—*Highway Crossings.*—*Rights of Persons on Highway.*—The rights of a railroad company whose tracks are lawfully on or across a public highway, and of a person lawfully using such highway, are equal, except that the railroad company has the prior right where both desire to use the highway at the same time and place; but the company's right of precedence is dependent upon its giving due notice of the approach of its train.    p. 222.

3. RAILROADS.—*Crossing Accidents.*—*Grade Crossings.*—*Ordinary Care.*—Since a railroad crossing at grade is a known place of danger, one approaching same and attempting to cross must use such care and prudence, proportionate to the known danger, as an ordinarily prudent and cautious person would use under like circumstances and conditions, to avoid injury.    p. 222.

4. RAILROADS.—*Crossing Accidents.*—*Presumptions.*—It will be presumed that one injured in attempting to cross a railroad track saw and heard that which he could have observed in the exercise or ordinary care.    p. 222.

5. RAILROADS.—*Crossing Accidents.*—*Care Required in Approaching Crossing.*—*Ordinary Care.*—While one approaching and attempting to cross a railroad track must always use ordinary care under the circumstances existing at the time and place, he is not chargeable with a higher degree of care on account of any obstructions, wrongful conduct, or failure on the part of the company to discharge any duty incumbent upon it; and where a railroad company by obstructions, or other negligent acts or omissions, makes a crossing more hazardous to persons desiring to use the highway, it must use such care and give such warnings of the approach of trains as are commensurate with such increased hazard.    p. 223.

6. RAILROADS.—*Crossing Accidents.*—*Looking and Listening.*—The law cannot arbitrarily determine the place or distance from the track, where one approaching a crossing must look and listen, but

the sufficiency of precautions taken in a given case must be determined from a consideration of whether, under the particular circumstances, the person approaching the track exercised ordinary care in selecting the place and in looking and listening.   p. 224.

7.   RAILROADS.—*Crossing Accidents.—Contributory Negligence.—Determination.—Acts or Omissions of Company.*—Obstructions placed by a railroad company on its tracks, its failure to signal the approach of its train to a crossing, or to perform any other duty it owes to a person lawfully on the highway, are often important elements to be considered in determining the question of contributory negligence.   p. 224.

8.   RAILROADS.—*Crossing Accidents.—Failure to Give Signals.— Rights of Person Approaching Crossing.*—While the failure of a railroad company to give warning of the approach of its train to a highway crossing does not relieve a traveler on the highway from the duty of exercising ordinary care in attempting to cross, he may, in the exercise of such care, rely upon the giving of the warnings required by law.   p. 224.

9.   NEGLIGENCE.—*Contributory Negligence.—Question of Law and Fact.*—The question of contributory negligence is usually a mixed question of law and fact; being a pure question of law only when the facts are undisputed and inferences deducible therefrom lead to but one conclusion, and a question of fact for the jury where the facts are controverted, or are such as are susceptible to different inferences by reasonable minds.   p. 224.

10.   RAILROADS. — *Crossing Accidents. — Ordinary Care. — Duty to Stop and Look and Listen.*—While a traveler on a public highway must always use ordinary care in attempting to pass over a railroad crossing, the question of whether he must stop before attempting to pass over it depends upon the facts of each particular case, and it cannot be said that in each case ordinary care requires that he should stop.   p. 225.

11.   RAILROADS.—*Operation.—Duty to Persons on Highway.*—The right of a railroad company to operate its trains is subject to the restrictions that it will use the care and prudence required by the law to avoid injuring persons lawfully upon the highway crossed by its tracks.   p. 225.

12.   RAILROADS. — *Crossing Accidents. — Conditions Misleading to Traveler.*—Where the conditions at a railroad crossing are indicative of unusual danger to one attempting to cross, such person must use care proportionate to the danger; but if the conditions are misleading and give to him a sense of security, when he is actually in danger, he is not held to that strict accountability applicable under ordinary conditions.   p. 225.

13.   NEGLIGENCE.—*Contributory Negligence.—Jury Question.*—When the question of negligence or contributory negligence is one of

fact, or mixed law and fact, it is to be determined by the jury under proper instructions as to the law.  p. 225.

14.  RAILROADS.—*Crossing Accidents.—Contributory Negligence.— Instructions.*—In an action for injuries by being struck by a train at a highway crossing, an instruction on the question of contributory negligence, stating that if plaintiff could not see or hear the train without stopping, and he did not stop, look and listen, he was guilty of contributory negligence, regardless of any obstructions, or negligent omissions or conduct on the part of defendant, and one stating that if plaintiff could not, while his wagon was in motion, learn of the approach of the train, his failure to stop raises a presumption of contributory negligence authorizing a finding for defendants, were each erroneous in that they invaded the province of the jury.  p. 226.

15.  RAILROADS. — *Crossing Accidents. — Duty of Person Attempting to Cross.—Instructions.*—An instruction that plaintiff, who was injured by a train at a highway crossing, "should have stopped and placed himself in a position, if any such position was available, where he could have seen the train," as well as instructions from which the jury understood that plaintiff could not recover if he could have ascertained that a train was approaching, either by stopping his team or by leaving it and going ahead of it around and beyond an obstruction placed by defendant, were erroneous in that they went beyond the rule of ordinary care and invaded the province of the jury.  p. 227.

16.  RAILROADS.—*Crossing Accidents.—Failure to Sound Whistle.— Instructions.*—In an action for injuries from being struck by a train at a highway crossing, an instruction that if the station was less than eighty rods from the place of the accident, there was no law of the State requiring the sounding of the whistle between the station and the crossing where the accident occurred, was misleading, since the statutory requirements are not in every instance the full measure of the care required in the operation of trains, and the jury probably understood therefrom that defendant was not required to give any warning of the approach of the train to the crossing after it left the station.  p. 228.

17.  RAILROADS.—*Highway Crossings.—Duty to Restore.—Instructions.*—Under subd. 5, §5195 Burns 1908, §3903 R. S. 1881, a railroad company must restore a highway crossed by it to its former state where it is practical to do so, otherwise it must be restored so as not to unnecessarily impair its usefulness; and a railroad. company, using planks in restoring a highway, cannot arbitrarily determine the width of such planked portion of the crossing, but is required to use the planks in such way and to such extent as to meet the requirements of the law; and, since by statute and the law independent of statute the right to interfere with a public

highway carries the duty to use reasonable care and skill to make it as safe and serviceable as it was before it was disturbed, the question, in an action for injuries sustained at a railroad highway crossing, of whether defendant was negligent in the discharge of its duty in this respect was for the jury, and an instruction that defendant was not required to plank its crossing the full width of the highway was erroneous.    p. 229.

18.  APPEAL.—*Review.—Effect of Erroneous Instructions.—Answers to Interrogatories.*—In an action against a railroad company for injuries sustained at a highway crossing, where it is apparent from the record that many of the answers to interrogatories tending to show contributory negligence were in a measure influenced by error in instructions, such error must be deemed to have been prejudicial.  p. 231.

From Benton Circuit Court; *James T. Saunderman,* Judge.

Action by Stanley Virgin, by his next friend Manford Virgin, against The Lake Erie and Western Railroad Company and another. From a judgment for defendants, the plaintiff appeals. *Reversed.*

*Addison C. Harris, Thompson & McAdams* and *Fraser & Isham* for appellant.

*John B. Cockrum, Stuart, Hammond & Simms* and *E. G. Hall,* for appellees.

FELT, P. J.—This is a suit by appellant against appellees for damages for personal injuries alleged to have been received on account of the negligence of appellees. The jury returned a general verdict against appellant and with it answers to interrogatories. The court overruled appellant's motion for a new trial and rendered judgment on the verdict. The error assigned is the overruling of the motion.

The accident which is the basis of this suit occurred in the daytime on November 23, 1905, at what is called the "Blasdell Crossing" within the corporate limits of the town of Boswell, Indiana. Appellee railroad company's road consisted of three tracks running east and west through the town and intersecting the north and south streets thereof which were five in number and each sixty feet in width. The

town contained a population of about 1,000, and the railroad divided it near the center. Appellee company's depot is located on the south side of the tracks and in the fourth square west of the Blasdell road, and west of Clinton Street. The grain elevators mentioned in the evidence are located north of the tracks. The Blasdell road is the farthest street east in the town and runs north and south across the railroad. The other streets which cross the railroad are west of said road and in their order are named Harold, Center, Clinton and Adams. Main Street runs east and west through the town and is the first street south of the railroad. North Street runs in the same direction and is north of the railroad. The main track of appellee company's road is the one farthest south, the next is known as the passing track and the one farthest north is called the house track.

Appellant was a farm hand and on the day of his injury was hauling corn to one of said elevators. At the time, and just prior to the accident, all of said tracks were occupied by trains, four in number. A west bound freight train consisting of forty-one cars and a caboose, stood on the passing track with the engine west of Clinton Street and its caboose extended to the center of the Blasdell road and left eight feet of the crossing plank unobstructed. An east bound freight train was on the house track and its rear cars were west of Adams Street. The engines of these two trains overlapped. A west bound passenger train had entered and was standing on the passing track 400 feet east of the Blasdell road. The train which struck appellant was going east on the main track. After appellant had disposed of his load of corn, he returned to Adams Street which he had crossed going to the elevator, for the purpose of crossing the railroad and going to the farm south of the town from which he was hauling corn. Finding the track obstructed, he turned north, entered North Street and drove east along that street until he came to the Blasdell road

where he turned south for the purpose of crossing the railroad on that street in order to reach his destination. The evidence tends to show that the railroad was built through said town in 1871-1872; that a fill of about three and one-half feet was made across the Blasdell road upon which appellee's road was constructed; that the station is 1,024 feet west of said road and there is a down grade of about three and one-half feet from the station to said road; that the approaches to the crossing on said road were made by cutting ditches on the side of the road and placing the dirt in the center of the highway; that the approaches were about sixteen feet wide and in the center of the highway; at the tracks appellee had placed boards sixteen feet in length as a means of crossing the tracks. The evidence tends to show that there was no one at the Blasdell road to warn appellant; that his view was obstructed by the freight train, the cars of which were twelve or fourteen feet high; that the engine of the east bound passenger train was not laboring and the train approached with but little noise, down grade at a speed of about fifteen miles an hour; that no warning was sounded of its approach to the crossing; that there was a bump board on the west side of appellant's wagon, as he drove south, which extended above his head; that as he approached the tracks he took his position in the front part of the wagon, brought his team to a slow walk, stilled his wagon to aid him in hearing any sound that might indicate danger, looked to the west and listened but heard no signal or noise to indicate the approach of a train or any danger, kept his team under careful control, did not stop but drove around the end of the caboose onto the track and was struck and injured as alleged in his complaint.

The issues before the jury involved the question of appellee company's negligence, appellant's contributory negligence, and the proximate cause of the alleged injury.

1. In determining the correctness of instructions, we are to keep in mind the issues and the facts of the

case as disclosed by the pleadings and evidence. The instructions given should correctly inform the jury as to the law applicable to the case and leave it free to determine the facts from the evidence, on all questions where there is a conflict in the evidence, or where the facts though undisputed are of such a character that reasonable minds might draw different conclusions therefrom.

It is a general rule of law that the rights of a railroad company whose tracks are lawfully on or across a public highway, and a person lawfully using such highway,

2. are equal except in the priority of right of the company in the use thereof when both desire to use the highway at the same time and place. *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 100 N. E. 313. The foregoing statement of the law presupposes that neither party is at fault. The right of precedence on the part of the company has been held to be dependent upon its giving due notice of the approach of its train to the crossing.

In *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 701, 88 N. E. 612, it is said: "The rights of the railroad company and the public to the use of highway crossings are equal, except that the company is entitled to precedence in passing upon giving due notice of its desire and purpose so to do." A railroad crossing at grade is a known place of danger. The appellant in approach-

3. ing and attempting to cross appellee company's tracks was required to use ordinary care and prudence to avoid any accident or injury. The law pre-

4. sumes that he did see and hear that which he could so observe in the exercise of ordinary care for his own safety. Ordinary care is that care which an ordinarily prudent and cautious person would use under like circumstances and conditions to avoid injury, and such care is always proportionate to the known danger. *Cleveland, etc., R. Co.* v. *Federle* (1912), 50 Ind. App. 147, 98 N. E. 123;

*Cleveland, etc., R. Co.* v. *Houghland* (1909), 44 Ind. App. 73, 83, 85 N. E. 369, 88 N. E. 623.   If under all the circumstances existing at the time and place of the accident, appellant used ordinary care in approaching and attempting to cross appellee company's tracks, he cannot be charged with any higher or different degree of care on account of any obstructions, wrongful conduct, or failure of the company to discharge any duty incumbent upon it under the circumstances.   In other words, any fault or negligence of appellee company, cannot enlarge or change the rule of care as to appellant from that of ordinary care.   On the other hand, if appellee company by obstructions or other negligent acts or omissions, made the crossing more hazardous to persons desiring to use the highway, it became and was its duty to use such care and to give such warnings of the approach of its trains to the crossing, as were commensurate with the increased hazard occasioned by such conditions or conduct.   *Pittsburgh, etc., R. Co.* v. *Lynch* (1909), 43 Ind. App. 177, 181, 87 N. E. 40; *Cleveland, etc., R. Co.* v. *Federle, supra; Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 433, 30 N. E. 37; *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519, 526, 90 N. E. 76; *Cherry* v. *Louisiana, etc., R. Co.* (1908), 121 La. 471, 46 South. 596, 17 L. R. A. (N. S.) 505, 126 Am. St. 323.   In *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 651, 70 N. E. 895, it is said: ''The running of locomotives and trains at a high rate of speed over street crossings in a city, even where the ordinary signals or the statutory warnings are given, may constitute negligence, and render the company liable for injuries occasioned thereby.   *  *  *   If the dangers of the situation require it, extraordinary precautions must be taken by the company to protect the public from injuries likely to occur at such crossing.''   On page 650 of the same opinion it is said: ''The degree of care to be exercised by the company must be commensurate with the dangers of the particular

situation created by its use of the street.'' See, also, *Lake Shore, etc., R. Co.* v. *Myers* (1912), 52 Ind. App. 59, 98 N. E. 654, 656, 100 N. E. 313, and cases cited.

The law does not undertake to determine arbitrarily the place, or distance from the track, where one approaching a crossing must look and listen, but the test is, Did he, under the particular circumstances, exercise ordinary care in selecting the place and in looking and listening for approaching trains? Obstructions placed by a railway company on its tracks, its failure to give signals of the approach of a train to a crossing or to perform any other duty it owes to the person lawfully on the highway, may be, and frequently are, important elements to be considered in determining the question of contributory negligence. *Cleveland, etc., R. Co.* v. *Harrington, supra; Malott* v. *Hawkins* (1902), 159 Ind. 127, 135, 63 N. E. 309; *Pittsburgh, etc., R. Co.* v. *McNeil* (1904), 34 Ind. App. 310, 318, 69 N. E. 471; *Evansville, etc., R. Co.* v. *Berndt, supra.* While the failure to give warning of the approach of a train, to a highway crossing, does not relieve the traveler from the duty of exercising ordinary care, he may, nevertheless, while in the exercise of such care, rely upon the giving of the warnings required by the law, when a train is approaching a crossing. *Chicago, etc., R. Co.* v. *Ginther* (1911), 48 Ind. App. 12, 90 N. E. 911, and cases cited.

Contributory negligence, or the want of ordinary care, is usually a mixed question of law and fact. It is a question of law when the facts are undisputed and the inferences to be drawn from them lead to but one conconclusion. Where the facts are controverted or of such a character that reasonable minds may draw different and contradictory inferences from them, the question is one of fact to be determined by the jury. *Diamond Block Coal Co.* v. *Cuthbertson* (1906), 166 Ind. 290, 306, 76 N. E. 1060. Whether a traveler must stop before attempting to pass over

a railroad crossing, depends upon the facts of each 10. particular case. He must always use ordinary care, but it cannot be said that such care requires him in every instance to stop before he attempts to cross. A railroad company has the right to operate its trains, 11. but that right is subject to the restrictions that it will use the care and prudence required by law to avoid injuring persons who have the right to go upon the public highways crossed by the tracks of such company. *Nichols* v. *Baltimore, etc., R. Co.* (1904), 33 Ind. App. 229, 233, 70 N. E. 183, 71 N. E. 170; *Malott* v. *Hawkins, supra; Hoggatt* v. *Evansville, etc., R. Co.* (1892), 3 Ind. App. 437, 443, 29 N. E. 941; *Chicago, etc., R. Co.* v. *Fretz, supra.* If the conditions, from any cause, are of a character to 12. indicate unusual danger in attempting to cross, the traveler must use care proportionate to such danger. If the facts and conditions are of a character to mislead one, about to pass such crossing and to give him a sense of security when he is in fact in danger, the law does not hold him to that strict accountability that it would under ordinary conditions, in the absence of such misleading facts, omissions or circumstances. *Indianapolis Union R. Co.* v. *Neubacher* (1896), 16 Ind. App. 21, 38, 43 N. E. 576, 44 N. E. 669; *Wabash R. Co.* v. *Biddle* (1901), 27 Ind. App. 161, 164, 59 N. E. 284, 60 N. E. 12; *Chicago, etc., R. Co.* v. *Fretz, supra,* 525, 532; *Chicago, etc., R. Co.* v. *Ginther, supra,* 19. Whenever the question of negligence or 13. contributory negligence is one of fact or mixed law and fact, it is to be determined by the jury from the evidence, under proper instructions as to the law. *Chicago, etc., R. Co.* v. *Fretz, supra,* 526; *Evansville, etc., R. Co.* v. *Berndt, supra.* In the recent case of *Indiana Union Traction Co.* v. *Sullivan* (1913), 53 Ind. App. 239, 101 N. E. 401, Hottel, J., in discussing the question of the court's invasion of the province of the jury, said: "The

court may, however, assume certain facts within the issues and in support of which there was some evidence and where the facts so assumed to exist admit of but one inference, and that inference is one of negligence, the court may tell the jury that if they find such facts to be proven by the evidence, they may infer negligence.''

The particular questions presented by the briefs all relate to the instructions given by the court at appellee company's request. Among the instructions given are the following: (22). "If the jury find from the evidence in this case that on approaching the crossing in question said plaintiff could not on account of obstructions whatever they might have been, see or hear the train, or any portion of it, without stopping, looking and listening; and if the jury also find that if by stopping, looking and listening before entering upon the track and in time to avoid injury the plaintiff might have avoided the injury complained of, but that he did not so stop, look and listen, then the jury are instructed that he was guilty of contributory negligence, and if the jury so find, their verdict should be for the defendants.'' 26. "That fact, if it is a fact shown in evidence, that the plaintiff did not, or could not, while his team and wagon were in motion, by the vigilant use of his eyes and ears, learn of the approach of said train; and if the jury also find from the evidence that before driving on the main track in front of the approaching train he did not stop, look and listen for such train, this raises a presumption of negligence against the plaintiff; and if the jury so find their verdict should be for the defendants.'' Applying these rules of law to the foregoing instructions, we are to determine whether the court invaded the province of the jury on the question of contributory negligence. Instruction No. 22 told the jury, in substance, that if appellant could not see or hear the train without stopping, and he did not stop, look and listen, he was guilty of contributory negligence, regardless

of any obstructions, or negligent omissions or conduct on the part of appellee company. The same error is found in instruction No. 26. It, in effect, tells the jury, that if appellant could not, while his wagon was in motion, learn of the approach of the train, his failure to stop raises a presumption of negligence against him and authorizes a finding for the defendants.

Instruction No. 25 given at the request of the appellee company goes beyond the rule of ordinary care and invades the province of the jury, by saying appellant "should have stopped and placed himself in a position, if any such position was available, where he could have seen the train." What was ordinary care under the conditions and surroundings, and whether appellant exercised such care, should have been submitted to the jurors for determination, without telling them in effect that, if it were possible to have learned of the approach of the train and he did not stop and take such precautions before attempting to cross, he could not recover. Instructions Nos. 24 and 27 asked by appellee company and given by the court, and possibly some others, are in general effect similar to those already discussed. Such instructions undoubtedly meant to the jury that appellant could not recover if it were possible for him to have ascertained that a train was approaching, either by stopping his team or by leaving it and going ahead of it to the track around and beyond the freight train, and that unless it was shown that he did take such precautions before he attempted to cross the track, he could not recover. In addition to showing the obstructions, the speed of the train and the absence of warnings, the evidence tends to show that appellant used some care in approaching and attempting to cross the tracks. He did not stop, and therefore under these instructions the jury was bound to find for appellee company, though the jury may have believed that a man of ordinary prudence, exercising ordinary care for his own safety, would have done just as appellant

did on this occasion. Appellant may have been guilty of contributory negligence, but it was for the jury to say what constituted ordinary care on his part. The court and not the jury by such instructions determines what is ordinary care. Ordinary care may or may not in this case have required appellant to stop, but on the facts of the case the court should not, in effect, have told the jury what was ordinary care on his part. The situation apparently suggested, or should have suggested, great care on the part of both appellant and appellee company. It is true that there is evidence both direct and circumstantial, tending to show that appellant was negligent, but this does not change the law. Other evidence also clearly tends to show that he used some care as he approached the crossing. There was no dispute about the location of the freight train and that it was more or less of an obstruction. That there was a dispute as to how completely his view was obstructed by it does not change the law applicable to the case, for it remains that, in any possible view, the facts were more or less controverted and of such a character that from them, men of equal intelligence and fairness might draw different and contradictory inferences. The jury and not the court should have determined whether ordinary care did or did not require appellant to stop and ascertain whether a train was approaching the crossing before he attempted to pass over. *Grand Trunk, etc., R. Co.* v. *Reynolds* (1911), 175 Ind. 161, 92 N. E. 733, 93 N. E. 850; *Evansville, etc., R. Co.* v. *Berndt, supra,* 701.

Instruction No. 6 given at the request of appellee company, told the jury that if the station at Boswell was less than eighty rods from the place of the accident, "there was no law of the State of Indiana requiring the engineer * * * to sound the whistle on the locomotive of said train between said depot and said crossing where the accident occurred." As an abstract statement of law the instruction may be technically correct as

it refers only to the sounding of the whistle. But it is in a sense misleading, for the statutory requirements are not in every instance, the full measure of the care required of a railroad company in operating its trains. The instruction does not refer to the requirements of the statute, but to those of the law generally. The distance from the station to the crossing where the collision occurred was a little over sixty rods and the jury would probably understand from the instruction that the company was not required to give any warning of the approach of the train to the crossing after it left the station. In view of the obstructions and the speed of the train, it was misleading and, as applied to the facts of this case, erroneous.

Instruction No. 7 and several others given at the request of appellee company are criticised by appellant as stating an erroneous rule in reference to the duty of the rail-17. way company to restore the highway to the conditions existing prior to the construction of the railroad. The statute (subd. 5, §5195 Burns 1908, §3903 R. S. 1881) requires the company to "restore the * * * highway * * * to its former state, or in a sufficient manner not to unnecessarily impair its usefulness." Instruction No. 7 in substance told the jury the law does not require appellee company to plank the crossing in question to the full width of the street, if it was wider than the portion that was planked. This is not an accurate statement of appellee company's duty in respect to the highway. The statute does not require the use of plank, but it does require the road to be restored "to its former state" where it is practical so to do, and where it is not, then to restore it so as not to unnecessarily impair its usefulness. The idea clearly expressed by the statute is to permit railways to cross public highways, and to require the railway companies to restore such highways to their former state of usefulness as nearly as may be in a practical and reasonable sense consistent with the use to be made of both the railway and the highway.

If the company saw fit to use planks as a means of restoring the highway in question to such a state of usefulness, it was required to use them in such way and to such extent as to meet the requirements of the law. The width of such planked portion could not be arbitrarily determined by the company, nor would it in every case be required to plank, or otherwise make the highway suitable for travel to its full width. In many instances this would be impractical and unreasonable, but both by the statute, and the law independent of the statute, the right to interfere with a public highway is coupled with the duty to use reasonable care and skill to make it as safe and serviceable as it was before it was disturbed. The jury should have been instructed in accordance with the law applicable to such crossings, and then have been required to determine from the evidence, whether appellee had complied with the law in this particular instance. If it had, then no negligence could be charged against it on that account. If it had failed to discharge the duty imposed upon it by the law in this respect, and it was shown that appellant's injury was caused by such failure on its part, then appellee company would be liable therefor, the same as for any negligent act which was the proximate cause of an injury. The language employed in some of the decided cases would seem to indicate that the railway company is required to restore the highway to its former state and to the full width of the highway in every instance. Such statements may be correct as applied to particular cases, but not as a rule of general application. We think the statute, the general law relating to such crossings, and the decisions, when properly construed, authorize the conclusion above stated. *Evansville, etc., R. Co.* v. *Crist* (1889), 116 Ind. 446, 454, 19 N. E. 310, 2 L. R. A. 450, 9 Am. St. 865; *Evansville, etc., R. Co.* v. *Carvener* (1887), 113 Ind. 51, 52, 14 N. E. 738; *Evansville, etc., R. Co.* v. *Allen* (1905), 34 Ind. App. 636, 641, 73 N. E. 630; *Chicago, etc., R. Co.* v. *Leachman* (1903), 161 Ind. 512, 516, 69 N. E. 253; *Lake*

*Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261, 277, 38 N. E. 476. We cannot consider in detail each of the instructions discussed in appellant's briefs, but what we have said, when applied to the several instructions is sufficient to indicate our view of the law applicable to the case.

It is also insisted by appellee company that, if it be conceded that there is error in the instructions, the answers to the interrogatories show that the appellant was not harmed by any instruction given. There are some answers that indicate appellant was negligent and others that indicate his attention was diverted by the presence of the other trains and that he looked and listened but could not see because of the obstructions. On the width of the highway, the answers are confusing and contradictory. It is apparent from a reading of the record that the answers to many of the interrogatories were influenced and in a measure determined by some of the erroneous instructions. In *Harmon* v. *Foran* (1911), 48 Ind. App. 262, 269, 94 N. E. 1050, 95 N. E. 597, this court said: "We cannot say that the jury was not influenced by this instruction in its consideration of the case, and that the answers returned to the interrogatories were not largely due to the effect which the instruction had upon the minds of the jurors, as the principal question to be determined in the case was whether the plaintiff was guilty of contributory negligence. If such instruction influenced the jury, and we conclude it did, the defendant was harmed and prejudiced thereby." The language quoted is applicable to several instructions and a number of the answers to interrogatories in this case. Here, as in that case, the principal question was that of contributory negligence. Other alleged errors need not be discussed, for reasons already stated in this opinion.

The judgment is reversed with instructions to the lower court to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

Ibach, C. J., Lairy, Adams, Hottel and Shea, JJ., concur.

NOTE.—Reported in 101 N. E. 500. As to the negligence of a railroad in allowing the view at a crossing to be obstructed by trees, etc., on its right of way, see 10 Ann. Cas. 485; 12 L. R. A. (N. S.) 1067. As to the duty of railroad employes on approaching crossing as affected by obstruction of traveler's view of track, see 22 L. R. A. (N. S.) 232. For failure to give customary signals as excusing nonperformance of duty to look and listen, see 3 L. R. A. (N. S.) 391. On the traveler's duty as to place and direction of observation, see 37 L. R. A. (N. S.) 135. See, also, under (1) 38 Cyc. 1594, 1646; (2) 33 Cyc. 922; (3) 33 Cyc. 981, 985; (4) 33 Cyc. 1073; (5) 33 Cyc. 966, 1018; (6) 33 Cyc. 1012; (7) 33 Cyc. 1018, 1027; (8) 33 Cyc. 1031; (9) 29 Cyc. 630, 631, 633; (10) 33 Cyc. 1010; (11) 33 Cyc. 924; (13) 29 Cyc. 634, 640; (14) 33 Cyc. 1138, 1140; (16) 33 Cyc. 1137; (17) 33 Cyc. 270, 271, 1100; (18) 3 Cyc. 386.