Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

of law stated by the court that appellee was entitled to a foreclosure of his lien against the house exclusive of the real estate. I think the court erred in this conclusion, and that appellee was entitled, upon the facts found, to the foreclosure of his lien against both the building and the lot upon which it stood. I think the cross-errors should be sustained.

---

## INDIANAPOLIS TRACTION & TERMINAL COMPANY *v.* HOLTSCLAW.

[No. 6,001. Filed December 11, 1907. Rehearing denied February 20, 1908. Transfer denied April 10, 1908.]

1. PLEADING.—*Complaint.*—*Master and Servant.*—*Street Railroads.* —*Negativing Assumption of Risk.*—A complaint by the conductor of a street-car against his company for negligence in maintaining its tracks too close to a telegraph pole, whereby, in the discharge of his duty, he was severely injured, alleging that plaintiff had no knowledge of the dangerous proximity of such pole to the track, necessarily implies that, by the exercise of ordinary care, plaintiff could not have discovered such peril. p. 525.

2. TRIAL. — *Verdict.*—*General.*—*Interrogatories.*—*Inferences.*—The answers to the interrogatories to the jury control the general verdict only when they are in irreconcilable conflict therewith upon any supposable state of the evidence within the issues, all reasonable inferences being indulged in support of the general verdict, and none in favor of such answers. p. 526.

3. MASTER AND SERVANT.—*Safe Place.*—It is the master's duty to exercise reasonable care in furnishing his servant a safe place in which to work. p. 527.

4. SAME.—*Assumption of Risk.*—The servant assumes the risk of all known or unknown dangers necessarily incident to the service, and of all dangers reasonably apparent or open, though they are not incident to the service. p. 527.

5. SAME.—*Assumption of Risk.*—*Law and Fact.*—When the admitted facts admit of but one reasonable inference, the question of assumption of risk is for the court; but where the facts admit of two inferences, the question is for the jury. p. 528.

6. SAME.—*Unsafe Place.*—*"Open and Apparent" Dangers.*—A danger is "open and apparent" which the servant, by the exercise of ordinary care, can discover. p. 529.

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

7.  MASTER AND SERVANT.—*Safe Place.*—*Presumptions.*—The serv-
ant has the right to assume, until he discovers, or should discover
the contrary, that the master has fulfilled his duty in providing
a safe place for the servant to work.  p. 529.

8.  STREET RAILROADS.—*Obstacles Near Track.*—*Assumption of Risk.*
—*Contributory Negligence.*—*Questions for Jury.*—Whether a
street railroad company was negligent in building its track so
near a telephone pole that the step along the side of a summer
car passed within twelve or thirteen inches of such pole, and
whether a conductor who, while in the discharge of his duties,
had passed such pole, in the daytime, many times a day for sev-
eral weeks, and who was injured thereby while discharging his
duties, assumed the risk of the dangers thereof, and whether
such conductor was guilty of contributory negligence with re-
spect to his passing such pole, are questions for the jury.
*New York, etc., R. Co.* v. *Ostman,* 146 Ind. 452, and *Pennsylvania
Co.* v. *Finney,* 145 Ind. 551, distinguished.  p. 529.

9.  SAME.—*Construction of Road.*—*Safe Place.*—A street railroad
company is under the duty of anticipating the movements of its
employes in the discharge of their duties, and of constructing its
road with reference thereto.  p. 539.

10.  TRIAL.—*Instructions.*—*Master and Servant.*—*Safe Place.*—
*Street Railroads.*—An instruction, in an action by a conductor
against his street railroad company, for injuries received by a
collision with a telephone pole too near the track, that if plaintiff
did not know, and by the use of ordinary care, could not have dis-
covered, that such pole was so close that it was dangerous, plain-
tiff should recover, is not defective, for not stating that if
plaintiff knew or should have known that there was a probability
or possibility of injury therefrom he could not recover.  p. 541.

11.  SAME.—*Instructions.*—*Master and Servant.*—*Assumption of
Risk.*—An instruction, in an action by the servant against his
master, that the servant does not assume risks which are not
reasonably and fairly incident to the service which he has under-
taken, is not misleading.  p. 541.

12.  SAME.—*Instructions.*—*Master and Servant.*—*Proof of Case.*—
An instruction, in a personal injury case, that the plaintiff, to
recover, must establish, by a preponderance of the evidence, that
he received the alleged injuries, or some part therof, and that
the alleged negligence of defendant was the proximate cause
thereof, is not a mandatory instruction, and when considered with
other correct instructions, fairly presents the case to the jury.
p. 542.

13.  EVIDENCE.—*Relative Distance of Objects from Street Railroad
Track.*—In an action by a conductor of a street-car against his
company for injuries sustained in a collision with a telephone

pole standing too near the track, it is not erroneous to exclude a question asking if the bridge near the pole was as near the track as the pole, since the conductor had a right to assume that the pole, as well as the bridge, was not so near as to cause a collision. p. 542.

From Superior Court of Marion County (66,555); *James M. Leathers,* Judge.

Action by Newton F. Holtsclaw against the Indianapolis Traction & Terminal Company and another. From a judgment on a verdict for plaintiff for $5,000, against such company, it appeals. (On motion to dismiss appeal, see 40 Ind. App. 311.) *Affirmed.*

*F. Winter* and *W. H. Latta,* for appellant.

*Cassius C. Hadley, F. C. Groninger* and *Charles S. Wiltsie,* for appellee.

RABB, J.—The appellee was in the employ of the appellant as a conductor on a street-car running over the West Michigan street line in the city of Indianapolis. His employment began some time in the month of June, 1903, and continued until August 3 of that year. Appellant's West Michigan street line, over which the appellee's car operated, extended from Blake street, in said city, to Haughville, a distance of perhaps two miles, and crossed White river. The street-car track approaching the bridge over White river is laid for a considerable distance upon a high embankment sixty feet wide. Over this embankment, prior to the construction of the appellant's road, the Central Union Telephone Company had erected a line of poles. These poles were thirty feet high and fourteen inches in diameter, and supported the telephone wires. Appellant's street-car, on this line, in charge of the appellee, was a large, open car, with the seats extending crosswise the full width of the car, and no means provided for the passage of persons up and down the length of the car inside of the body of the car. A running-board extended along the outside of the car its full length. This running-board was about six inches wide, was

NOVEMBER TERM, 1907.        523

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

located about eighteen inches below the floor of the car, and extended outside of the body of the car ten and one-half inches.   There were stanchions, about four inches square, extending from the floor of the car to the roof, at the end of each seat, and on the outside of these stanchions were metal handholds, extending up and down the stanchions a distance of about three feet, and out from the face of the stanchions about four inches.   The running-board was intended to accommodate the conductor in passing from one end of the car to the other, collecting fares, and in the performance of other duties appertaining to his employment.   His position upon the car, when not engaged otherwise, was on the rear platform, from where he controlled the operation of the car by means of signals to the motorman, who occupied the front platform.   A bar extended from the front to the rear of the platform, just below the roof of the car, to which were attached handles, by means of which a register of fares, located at the front end of the car, was operated by the conductor.   In operating this attachment the conductor was compelled to reach above his head to take hold of those handles, and pull them to register the fares.   The running-board was also designed to accommodate passengers when the car was so crowded that there was not enough seats within the car for all desiring passage.   In constructing the road the track had been so laid that it came within three feet of one of the poles along this embankment located about three hundred feet west of Caldwell street, said street being the last street on the appellant's line going west before reaching the bridge over White river.   In passing this telephone pole the running-board of the street-car came within twelve or thirteen inches of the pole.   It was usual for appellant's street-car passing over this line to run at a high rate of speed over the space intervening between Caldwell street and the first street on the opposite side of the river, there being no points intervening along the line at which passengers would ordinarily desire to get on or off the car.   About 6:30

524 APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

o'clock, on the morning of August 3, while appellant's car in charge of the appellee was passing at a rapid rate of speed over this grade, and while appellee was passing along the side of the car on said running-board, in the discharge of his duties as conductor, collecting and registering fares, his body collided with this telephone pole, and he was knocked from the car and very severely injured. To recover damages for this injury he instituted this action against the appellant and the telephone company.

The complaint was in two paragraphs. In the first he charged the telephone company with negligence in erecting their poles in such proximity to the street-car tracks as to endanger the employes of the appellant company in the performance of their work on the cars, and charged both defendants with negligence in maintaining the pole in such dangerous proximity to the street-car line. The second paragraph of the complaint was precisely the same in this respect, except that it charged the appellant with constructing its car lines in dangerous proximity to the telephone pole. Appellant's demurrer for want of facts to the first paragraph of the complaint was overruled. No demurrer was filed to the second. The case was put at issue, a jury trial had, resulting in a general verdict in favor of the telephone company against appellee, and a general verdict in favor of appellee against the appellant, and with the general verdict answers to certain interrogatories propounded were returned by the jury. Motion was made in the court below by appellant for a judgment in its favor on the answers to the interrogatories, which was overruled, as was also appellant's motion for a new trial. The rulings of the court on the demurrer to the first paragraph of the complaint, on the motion for a judgment in favor of appellant on the answers to the interrogatories, and on appellant's motion for a new trial, are assigned as error here. The sufficiency of the second paragraph of the complaint is also tested by an assignment of error.

NOVEMBER TERM, 1907.     525

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

It is urged against the sufficiency of both paragraphs of the complaint that their averments fail to negative

1. the ability of the appellee to discover the danger of collision with the telephone pole by the exercise of reasonable care and diligence on his part. In each paragraph of the complaint it is substantially averred that at the time appellee was injured he had no knowledge of the dangerous proximity of the telephone pole to the street-car track. These allegations carry with them the necessary implication that the peril could not have been discovered by the exercise of ordinary care on appellee's part, and was sufficient on demurrer. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297; *Evansville, etc., R. Co.* v. *Duel* (1893), 134 Ind. 156.

The answers to interrogatories returned by the jury with their verdict show that appellee continuously served as conductor on appellant's street-car running over West Michigan street during the month of July, and up to August 3, 1902; that during that time he made 205 trips over said line, 137 of them on car No. 525, and that the trips were generally made in the daytime; that on August 3 he suffered the injuries described in his complaint by coming in contact with pole number 38 of the Central Union Telephone Company, which stood on the north side of the street-car track, while he was engaged in his duties as conductor in charge of car No. 525; that the appellee was possessed of good eyesight during all of said time, and that the pole with which he collided stood in the same position all the time appellee was passing over the road, and was visible to him in a general way as he passed; that appellee did not know and could not, by the exercise of ordinary care, have known of the position of the telephone pole with reference to the running-board of the car. It is earnestly insisted by appellant that these answers show a state of facts that are antagonistic to the general verdict, and that are in irreconcilable conflict

with it, and that for this reason its motion for judgment on the answers to interrogatories should have been sustained.

The special findings or answers to interrogatories returned by a jury with their general verdict can only override the general verdict when both cannot stand, and the antagonism must be apparent on the face of the record beyond possibility of being removed by evidence admissible under the issues, before judgment can be given against the general verdict, and no presumptions or intendments can be indulged in favor of the answers to interrogatories, but all reasonable presumptions are indulged in favor of the general verdict. It is only when the answers to the interrogatories find that facts which are necessary to support the general verdict do not exist, or that some fact which would defeat the plaintiff's recovery does exist, that the answers to interrogatories will override the general verdict. *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583; *Consolidated Stone Co.* v. *Summit, supra; Citizens St. R. Co.* v. *Hoop* (1899), 22 Ind. App. 78; *Diamond Plate Glass Co.* v. *DeHority* (1896), 143 Ind. 381; *Hill* v. *Indianapolis, etc., R. Co.* (1903), 31 Ind. App. 98.

Recognizing these rules, the appellant still insists that the finding by the jury of the facts that the telephone pole with which appellee collided was plainly visible in daylight, that the appellee had good eyesight, and that he had passed the pole over two hundred times, conclusively show that the appellee, by the exercise of ordinary care, could have discovered the danger of collision with the pole, and that the further finding by the jury that the appellee could not, by the exercise of ordinary care, have discovered the proximity of the pole to the running-board of the car is not the finding of a fact, but a conclusion made by the jury, which must be ignored in considering the question. If the appellant is correct in its theory that the existence of the facts that the telephone pole was an object plainly to be seen from the car, and the opportunities the appellee had to observe its prox-

NOVEMBER TERM, 1907.          527

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

imity to the railway track, are such as not only warrant the inference, but compel the conclusion, that by the exercise of appellee's sense of sight he could have determined the dangerous proximity of the pole to the car on which he was riding, then we think appellant is correct in claiming that it was an error to overrule its motion for judgment on the answers to the interrogatories. But if appellant is in error in this theory, and the facts thus disclosed do not compel the conclusion that the appellee could, by the exercise of ordinary care and diligence, have known of the danger from the collision with the pole, then the action of the court was right in overruling its motion, and the whole theory of appellant's case, not only with reference to the ruling of the court upon the motion for judgment in its favor on the answers to the interrogatories, but also on its motion for a new trial on the ground that the evidence was not sufficient to sustain the verdict of the jury, must fall to the ground, as they both depend upon the same hypothesis to support them.

It is a well established rule governing the relation of master and servant that the master must exercise reasonable care and diligence to provide his servants with a safe place in which to work, and safe appliances to work with. This rule is so well settled and so well recognized that it is unnecessary to cite authorities that declare it; and this rule is appealed to by the appellee to sustain his cause of action. He claims that this rule was violated by the appellant in constructing its road in such dangerous proximity to the telephone pole that its servants, though exercising reasonable care, were liable, in the discharge of the duties of their employment, to collide with the pole and be injured.

It is also a well-established rule governing this relation that a servant in accepting employment from his master assumes all hazards and dangers necessarily incident to the service, whether known to him or not, and that he assumes all risks and hazards of the service that

are open and apparent to him, whether they are necessarily incident to the service or otherwise, and this assumption includes not only risks and hazards that are known to him, but such as he could, by the exercise of reasonable diligence and care, discover. These rules are so well settled and recognized that it is unnecessary to refer to the countless authorities by which they are expressed. These rules are appealed to by appellant as sustaining its contention.

There is no difficulty whatever about the rules of law that govern the rights and duties of master and servant. The difficulty arises in the application of the rules to the facts. In this case the telephone pole with which the appellee collided was plainly visible. The means and opportunities the appellee had for discovering its proximity to the appellant's track, and the danger to be apprehended from collision with the pole while thus passing along the running-board of the car in passing the pole, were such as came to him in riding upon his car, passing over the line at this point, and none other. And the question is, was he bound to know, from observation thus obtained, of the danger?

If these facts charged him with knowledge of the peril, then it was a question of law for the court to decide. If, however, they were mere evidentiary facts, from which the inference of the appellee's knowledge of the peril might or might not be drawn by reasonable men, then it was a question of fact for the jury. The question in this respect is precisely analogous to the question of negligence. If the facts are such that there is room for men of reasonable minds to draw but one inference from them, then it is a question for the court, but if they are of such a character that reasonable men might differ as to the proper inference to be drawn from them regarding the question of negligence, then it is a question for the jury.

The question must largely depend on what is meant by the terms "open" and "apparent." That is open and ap-

parent which, by the exercise of ordinary care on the part of the party charged with the duty to exercise such care, can be discovered. The only care and the only diligence that could be required of appellee in this case was that of observing this telephone pole as he passed it.

Would such observation disclose to him the dangerous proximity of the pole to the track? Could it be said as a matter of law that such observation would lead a reasonable man to suppose, over the presumption that he had a right to indulge in, that the company had performed its duty, that the pole was so close to the track as to endanger him in the discharge of his duties in a reasonable and careful manner while passing along the running-board.

Men's powers of estimating distances vary greatly, dependent somewhat on natural ability, and more upon practice. Mechanics and others whose business it is to make estimates, and to make measurements, naturally can estimate with greater accuracy the distance between points than those who are not mechanics or not in the habit of making such measurements and estimates. If two inexperienced and unskilled men in the ordinary occupations of life, and of ordinary intelligence, were called upon to make a careful observation of the distance between the telephone pole in this case and the track, after a careful examination of the location of each and with the thought of correctly estimating the distance between the two, it is not improbable that both of them would miss the correct distance by as much as six inches or a foot. And how could it reasonably be contended that this conductor, passing this pole at a rapid rate of speed, should be able to determine accurately the distance from the running-board to the pole, whether it was one foot or two? The line of demarcation between safety and danger was a very narrow one. Had the pole been six inches farther away it probably would have been entirely safe, and the accident to appellee would not have occurred. Can it be said, as a matter of law, that ap-

530    APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

pellee was bound to know that the pole was six inches closer to the track than it really was? We do not think so.

Two cases are called to the attention of the court by appellant that in some measure tend to sustain its contention. In one of them (*New York, etc., R. Co.* v. *Ostman* [1896], 146 Ind. 452) the appellee's intestate, a fireman upon the appellant's road, while in the discharge of his duties and looking for signals, was killed by being struck in the head as he came in collision with a cattle chute placed within thirteen inches of the cab. There was a special verdict in the case. The special verdict disclosed that the fireman had been in the employ of the defendant for eighteen months prior to his death, and that during that period, in the discharge of his duties, passed twice each week the station where the accident occurred, and did switching work at the station. The jury found that the appellee's intestate did not know, and could not know, of the hazard to which he would be subjected in passing the chute in the manner he did at the time of his fatal injury. The case was decided by a divided court, and it was there held that the special verdict failed to support the judgment of the court. The court, in passing upon the case, say: "The fact that the jury found that he [the fireman] did not know, and could not know, of the hazard to which he would be subjected in passing the chute in the manner he did, at the time of his fatal injury, has no bearing upon the question of care upon his part. It is a finding which is antagonized by the specific facts disclosed by the verdict, and we must accept them as controlling under such circumstances. * * * It is urged by appellee that the facts show that her decedent did not know what distance the part of the chute which struck him was from the passing engine. In answer to this it may be said that the means of knowing by ordinary care is evidence of knowledge. * * * We are of the opinion that, under the facts as they are disclosed by the finding in this case, knowledge of the hazard or danger to which it is claimed by

NOVEMBER TERM, 1907. 531

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

the appellee that her intestate was subjected and exposed by reason of the location of the cattle chute and the manner in which it was maintained, must be imputed to him. It is not made to appear by any reasonable inference that may be drawn from the specific facts found, that there was freedom from contributory negligence upon the part of the deceased at the time of the accident. The special verdict does not support the judgment." The court in that case had under consideration a special verdict, in which, to sustain a judgment, every fact necessary must be made affirmatively to appear, not by way of recital, not by the statement of conclusions of law, but from the finding of facts. No inferences are indulged in favor of the party having the affirmative of the issue, and it was made at a time when the law required that in actions of this character it was incumbent upon the plaintiff in the case affirmatively to show that he himself was free from negligence contributing to his injury. It was upon the ground that the special verdict failed affirmatively to show that the appellant was free from contributory negligence that the judgment of the court was based.

Another case cited by counsel is that of *Pennsylvania Co.* v. *Finney* (1896), 145 Ind. 551. In that case the appellee, a brakeman, was knocked from the ladder of a freight-car that came in collision with a water-plug along the defendant's track, and killed. It was held by the court that the evidence was not sufficient to sustain a verdict in favor of the plaintiff, the point decided being that the evidence failed to show that the brakeman was free from negligence contributing to his injury. The evidence disclosed that at about 11 o'clock on April 5, 1890, the brakeman was engaged in the discharge of his duties on top of the train, while passing the station of Columbia City; that the train was running at the rate of about fifteen miles an hour; that, under the rules of the company, after the appellee had passed a station he was at liberty to return to the caboose; that the plug with which the deceased collided was erected and maintained at the Co-

lumbia City station; that deceased had passed the plug in daylight, and had opportunity of seeing the same for six or seven months immediately prior to his death; that it was plainly visible for a distance of one-half mile; that in going to the ladder to climb down the appellee had his back to the crane; that he did not look for it at the time of the accident, or make any effort to ascertain its presence; that by looking he could have seen it, but that he neglected to do so, and that in climbing down from the car at the time he did he did so of his own volition. It was not shown that any duty called him to the caboose. The court say, in deciding the case: "We are unable to discover, in this cause, any evidence in the record from which a reasonable inference can fairly arise, that appellee's decedent was in the exercise of due and ordinary care at the time of the fatal accident. The jury was not authorized, arbitrarily, without evidence, to infer the absence of contributory negligence."

Since that case was decided the rule of evidence on the question of contributory negligence has been changed by the statute, and since those cases were decided the Supreme Court of this State has decided the case of *Baltimore, etc., R. Co.* v. *Roberts* (1903), 161 Ind. 1, in which the appellee was injured by coming in collision with a car upon an adjacent side-track in appellant's yard, while in the performance of his duties as a switchman in said yards, and while standing in the stirrup at the side of one of appellant's freight-cars and holding to a handhold, which was the necessary and proper way for him to ride and to be while performing his work. Appellee had been in appellant's employ about six weeks, and had passed through the switch yard a number of times, but had never seen cars standing opposite each other upon the two side-tracks at the point where he was injured. The ground of the action was the negligence of appellant in constructing its side-tracks in the switch yard so close together that danger of injury to employes riding, as the appellee was doing, by

NOVEMBER TERM, 1907.		533

Indianapolis Traction, etc., Co. v. Holtsclaw—41 Ind. App. 520.

their coming in collision with cars upon adjacent side-tracks, was reasonably to be apprehended. It was contended that the evidence affirmatively showed that the danger incurred was one of the risks assumed, and that the appellee could see the proximity of the side-tracks and was chargeable with notice of the danger. The court, in passing upon the question, say: "Appellant's contention that appellee is shown by the evidence to have assumed the hazard due to appellant's negligence is not sustained. Neither is the claim that the facts establish that he was guilty of contributory negligence." And among the cases cited by the court and quoted from as sustaining the decision of the court is the case of *Johnston* v. *Oregon, etc., R. Co.* (1892), 23 Ore. 94, 31 Pac. 283, in which the supreme court of Oregon say: "The servant is expected to observe such objects only, in the absence of notice, as would in an instant convince him of their danger. It is not expected of a switchman that he should carefully measure the distance between a switch target and the rail. This is the duty of the master, and the servant has the right to assume that the target or other obstruction is at a reasonably safe distance in the absence of anything to excite special apprehension of danger. *Whalen* v. *Illinois, etc., Coal Co.* (1885), 16 Ill. App. 320. And if he knew that the target was but four feet from the track, he might then not be aware of the imminent danger. 'One may know the facts and yet not understand the risk.' " In the case of *Baltimore, etc., R. Co.* v. *Roberts, supra,* at page 14, the court say: "So it may be said in regard to appellee, for, in the absence of knowledge to the contrary, he was not in duty bound to go upon a search and ascertain by measurements or otherwise whether the tracks in controversy were so close to each other as to render them unsafe for the operation of cars by the servants of appellant thereover. He had the right, unless admonished to the contrary, to assume that the tracks were a reasonably safe distance from each other, and to act upon that assumption."

534 APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. v. Holtsclaw—41 Ind. App. 520.

In the case of *Pittsburgh, etc., R. Co.* v. *Parish* (1902), 28 Ind. App. 189, 91 Am. St. 120, the appellee's intestate, a conductor upon a freight-train on appellant's road, was killed, while in the discharge of his duties, in passing over the top of appellant's freight-cars, by coming in contact with the limbs of a tree standing on appellant's right of way, and overhanging the switch track. The evidence disclosed that appellee had been in the employ of appellant as a conductor for eight or nine years, and that when he was injured he had his lantern with him and was in a proper place. It was argued that the nature of the obstruction with which decedent collided was such that, in the exercise of ordinary care, he must necessarily have seen it. It was open and obvious. The court say, in passing upon this case: "Decedent may have passed over the side-track a number of times in the performance of his duties as a conductor and yet never have seen the overhanging branches. He may have seen the tree and its branches while passing along the main track, and yet the danger from them would not necessarily have been apparent. It was not an obstruction always dangerous to employes passing over the switch, but was dangerous only to a person on top of a car; and, unless the tree and its branches were seen with reference to a car their dangerous character might not be apparent. So that knowledge of the existence of the tree and its branches, and knowledge of the danger from them, are not necessarily one and the same. It was admitted that he had been given no actual notice of the obstruction. * * * When all the evidence in the case is considered, it must be concluded that whether decedent assumed the risk or was charged with notice of the danger to which he was exposed, was a question for the jury."

In the case of *Charlton* v. *St. Louis, etc., R. Co.* (1906), 200 Mo. 413, 98 S. W. 529, a fireman was killed in a collision with a water-crane, which he had passed and had opportunity to observe many times. The court say, on page 435, in holding that the questions of assumed risk and of contributory

NOVEMBER TERM, 1907.    535

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

negligence, under the circumstances shown by the evidence, were for the jury: "No evidence here that Charlton knew how close this water-crane and projecting rod were to defendant's track, nor had he such means of knowledge as would be equivalent to knowledge. No one told him of the distance. The knowledge, if any he had, under the facts in proof, was such only as might come to him while he was attending to and absorbed in his duties as a trainman running through Paoli, and stopping, possibly, for water at the wooden tank. On such proof we are not willing to say, as a matter of law, that he should be held to know the distance of the crane and rod from the track, that is, the danger therefrom."

In the case of *Hoffmeier* v. *Kansas City, etc., R. Co.* (1904), 68 Kan. 831, 75 Pac. 1117, the appellant, a conductor on appellee's street-car, constructed precisely as the street-car upon which the appellee in this case was acting as conductor, was knocked from the running-board of the car, as was the appellee in this case, by colliding with a pole erected by the company alongside of the road for the purpose of conducting the electric current by which the car was operated. A demurrer was sustained by the trial court to the plaintiff's evidence. The court say in reversing the case: "The plaintiff, upon entering the defendant's service, accepted no risk arising from its negligence. He had the right to assume that the company had not set him to toil in the midst of danger. He had the right to assume that the road was built with ordinary care and consideration for the safety of the men who were to operate it, and he was not obliged to make any independent investigation for hazards resulting from the disregard of such care. Without actual knowledge of his peril, or a patency so ample as to exclude ignorance, the plaintiff assumed no risk in continuing to work under the conditions surrounding him. * * * The evidence on behalf of the plaintiff is such that the jury might say he stood acquitted of any knowledge of the jeop-

536    APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. v. Holtsclaw—41 Ind. App. 520.

ardy occasioned by the particular pole which caused his injury, and of any culpable carelessness in failing to observe it, and that his conduct at the time of his injury was that of a reasonably prudent man. Other elements essential to a recovery were admittedly established. Therefore the jury should have been permitted to weigh the testimony and to approve or condemn the plaintiff's conduct, as they saw fit.''

In the case of *Galveston, etc., R. Co.* v. *Mortson* (1903), 31 Tex. Civ. App. 142, 71 S. W. 770, the plaintiff, a brakeman on appellant's line, was injured by being knocked from a ladder on the side of a freight-car by coming in collision with a warehouse alongside one of appellant's side-tracks. The accident happened in the daytime, and the plaintiff testified that he had seen the warehouse, but did not know its position and had not been warned about its nearness to the track. Judgment in favor of the plaintiff was affirmed by the higher court, the court holding that it was the duty of the appellant to warn appellee of the proximity of the warehouse to the track; that the employe was under no obligation to make any investigation to ascertain for himself its degree of proximity; that he had a right to rely upon the appellant's doing its duty in respect to informing him about objects that were dangerously near the track, of which he would not know.

In the case of *Galveston, etc., R. Co.* v. *Brown* (1903), 33 Tex. Civ. App. 589, 77 S. W. 832, a brakeman was injured by striking a post, in dangerous proximity to the track, while he was riding on the side of a freight-car in the course of his employment. It was held by the court that it was not the duty of the brakeman to inspect the premises.

In the case of *Texas, etc., R. Co.* v. *Swearingen* (1904), 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382, the appellee was a switchman in the employ of the appellant. While performing his duties as switchman, and riding on the side of a car, his body collided with a scale box in proximity to the car, and he was knocked from the ladder and injured.

The space between the ladder on the side of the freight-car, when it was moving on the track, and the scale box in question was nineteen and one-half inches. It was contended that the danger of collision with the scale box was one of the assumed risks of the employment. At the time appellee was struck and injured he was on the ladder looking in the opposite direction from which the car upon which he was riding was moving, watching for signals from the yardmaster, as it was his duty to do. The appellee had worked in the switch yards and had opportunity to observe the scales, but testified that he had never used this particular switch near the scales, never saw a car on the track opposite the scales, never had his attention called to the distance between the track and the scale box, and never measured it or approximated the distance to it, and nothing ever occurred to attract his attention to it. He knew he had to pass the scale box at the time he was hurt, but was not thinking about it, and did not see it when they passed going out after the cars. The accident happened at night. The appellee had a lantern, the switch-engine had a headlight and a light at the rear. Appellee was on the footboard of the engine as it was backing past the scale box after the cars. He testified that he knew the location of the scale box before he was hurt, but did not know anything with reference to its proximity to the track over which he was riding at the time of his injury. He did not know it was dangerously close, and was never warned about the danger. The appellant asked that certain instructions be given to the jury by the trial court. It is said by the court, in deciding the case: "The right to have the jury instructed to find for the company was based upon the following contention: * * * '(b) Because plaintiff testified he knew of the location of the track scale box and the location of track No. 2 with reference to said track scale box, on which track No. 2 he was riding at the time he was hurt, and because the undisputed evidence shows that the track scale box and the danger of the

538    APPELLATE COURT OF INDIANA,

Indianapolis Traction, etc., Co. *v.* Holtsclaw—41 Ind. App. 520.

same were open and obvious to plaintiff's view, and that neither the track scale box nor the dangers thereof were hidden or latent, and plaintiff was presumed to know the danger and to have assumed the risks thereof.' * * * The motion was properly overruled. So far from its being the fact, as asserted, that the evidence established indisputably the existence of the grounds upon which the motion was based, the record shows that there was evidence tending to establish that the track scale box was not erected in a reasonably safe place, and that, although the plaintiff knew that the scale box was situated adjacent to track No. 2, he did not know that it was so near that it could not be passed in the performance of his duties as a switchman without danger. * * * The court of appeals was of opinion, and rightly, we think, that the dangerous contiguity of the scale box to track No. 2, and the extra hazard to switchmen resulting therefrom, was not so open and obvious on other than a close inspection as to justify taking from the jury the determination of the question whether there had been an assumption of the risk. The plaintiff was entitled to assume that the defendant company had used due care to provide a reasonably safe place for the doing by him of the work for which he had been employed, and as the fact that the defendant company might not have performed such duty in respect to the scale box in question was not so patent as to be readily observable, the court could not declare, in view of the testimony of the plaintiff as to his actual knowledge of the danger, that he had assumed the hazard incident to the actual situation, citing *Choctaw, etc., R. Co.* v. *McDade* (1903), 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96.'' The judgment was affirmed.

A great many more adjudicated cases might be cited of the same general character, involving facts of similar nature, and holding to the same view, and not a few cases may be found supporting the contention of appellee. The cases are not altogether harmonious upon the question, and we

will not undertake to reconcile the adjudications on the subject, but content ourselves with adopting the views expressed by the later decisions of our Supreme Court and those of the United States Supreme Court, and other cases harmonizing with them. We think they express a more just and reasonable rule than the class of cases holding that trainmen are bound to know, from such observation as they catch in passing, whether objects in plain view along the line of the road are in dangerous proximity to the track. An object might look to a trainman in passing over the road, the car in motion, to be at a perfectly safe distance away from the line, when, in fact, it was much nearer than it appeared to him to be. He has a right to assume that his master has performed his duty in respect to exercising reasonable care in making his place of employment safe.

In this case the master constructed this road, and it knew exactly the distance from this telephone pole to its track. It knew what kind of cars would be run over the track. It knew what kind of service its employe operating the car would have to perform. It knew that in operating the summer cars the conductor would be required to pass along the running-board to take up the fares, and that while passing along the running-board his attention would necessarily be drawn to the passengers on the inside of the car. It knew, too, and was bound to know, that the conductor would be required to move his body in various positions; that he would be required to reach into the car to get fares, and to withdraw his body to an upright position; that he would be required to lean back to reach up over his head to take hold of the appliance by which the fares were registered, and it was bound to know, too, that at times, when the cars would be crowded, and passengers would be standing upon the running-board, that the conductor, in passing back and forth along the running-board, would be compelled to go around the body of each passenger standing on the running-board; and it was its duty so to construct its

road with reference to objects along the line, where it was reasonably practical to be done, as to leave ample room for the movement of its employes and of the passengers who might be expected to ride upon the running-board. If the circumstances were different, if the object with which the appellee had collided was some character of structure that could not have been avoided, and to which it was necessary the road should run in close proximity, it would be different; but here the object was a telephone pole which, from its very nature, could easily have been moved a distance of one or two feet.

We hold that the question as to whether the danger of collision with this telephone pole was a danger that was so open and apparent that the appellee was bound to know of it, and therefore to assume the risk, was properly submitted to the jury, and that it was not, under the circumstances shown in the evidence, a question of law. For the same reason that the danger was not an assumed risk, the question of whether the appellee was guilty of contributory negligence in failing to observe the pole, and the danger that was to be apprehended from it, was a question for the jury. If the circumstances were such that the appellee was bound to observe the pole and its dangerous proximity to the track, then it was an assumed risk. While there is an essential difference between the doctrine of assumed risk and the question of contributory negligence, yet, in this case, the evidence that would show an assumption of risk would also show contributory negligence, and evidence that would exonerate the appellee from contributory negligence would exclude the assumption by him of the risk. The evidence in the case was sufficient to support the verdict of the jury, and there is no conflict between the general verdict and the answers to the interrogatories.

Appellant's motion for a new trial also raises the question as to the correctness of numerous instructions given by the court to the jury. We have examined the instructions

with care, and we think they fairly state the law of the case to the jury.

Appellant criticises the twelfth instruction given by the court to the jury. The only ground of criticism is that the court instructed the jury that if the plaintiff did not know, and could not have known by the exercise of reasonable care and diligence on his part, that the pole that struck and injured him was in such close proximity to said defendant's track as to be dangerous and likely to injure him, etc., then the plaintiff is entitled to recover. This, it is claimed, was not enough; that the court should have instructed the jury further, and told them that if, by the exercise of ordinary care on the part of the appellee, he could have discovered that there was a probability or a possibility of danger from the situation, then he would not be entitled to recover. We think the instruction given by the court to the jury was correct, and that it did not require that the evidence should disclose that the appellee, if he could have discovered by the exercise of diligence a bare possibility of injury, could not recover, either that such fact would cast the risk upon him as one of the assumed burdens of his employment, or prove him guilty of contributory negligence in incurring it. The question was not, was there a probability or a possibility of danger, but, was there a probability of injury. From the probability of injury came the danger, and that was the thing, the knowledge of which, would exclude the appellee from recovery. The instruction given to the jury clearly and plainly put the question before their minds, and it could not have been misunderstood.

Instruction eleven is criticised for the reason that the instruction, in defining what risks are assumed, uses the terms "which is not reasonably and fairly incident to, and within the ordinary risks of the service which the servant has undertaken." We think that this criticism is without merit or reason, and that it is only the risks that are reasonably and fairly incident to the service

which the servant assumes.   He does not assume risks that would be unreasonable to claim were incident to the service, and we think the instruction could not have misled the jury.

Instruction six is also subjected to criticism.   The instruction was as follows:   "Before the plaintiff is entitled to recover in this case he must establish by a fair preponderance of the evidence, (1) that he received the injuries or part thereof, as alleged in his complaint; (2) that the carelessness of the defendant, as charged in the complaint, was the direct and proximate cause of such injury."   Appellant discusses this instruction as though it were a mandatory instruction, but it is not, and subject to none of the rules that apply to a mandatory instruction.   It is to be construed along with all the other instructions given by the court in the case, and, taking them all together, they fairly and clearly present the law of the case to the jury.

The court permitted appellant, on cross-examination, over objection, to ask appellee:   "Was the north side of the bridge nearer the running-board as you passed through it than the telephone pole on the north side would be as you passed it?"   We cannot see the relevancy of this question, or how it could have been material. It is not made clear how any kind of an answer that the witness would have made to this question could have tended to prove either that the risk of a collision with the telephone pole was so open and apparent that appellee should have known it, or that he was guilty of contributory negligence. He had a right to assume that neither was near enough to the track to cause him injury in the performance of his duty.

A point is made over the alleged sustaining of an objection to a question claimed to have been propounded to the appellee upon his cross-examination.   We find no such question in the record, nor do we find any error in the record that would justify a reversal of this cause.

The only serious question that is presented by the record is whether the facts presented in the evidence were such as to render the question of the assumption by appellee of the risk of injury from collision with the telephone pole one of law for the determination of the court. While recognizing the fact that there is a conflict of authority upon this question, we have concluded that the soundest reason and weight of judicial decision in this country and in this State are with the appellee.

The judgment of the court below is affirmed.

Hadley, J., not participating.

## CONCURRING OPINION.

ROBY, C. J.—I concur in the result and in most of the reasoning of the majority opinion, but do not understand that assumed risk and contributory negligence depend on the same facts. I do not think that the defect complained of was, in any view of the case, a risk incident to the employment, negligence upon the part of the master not being a legitimate part of any business.

If the risk was assumed, it was because it was an obvious and open one. The subject has been fully and recently considered by both the Supreme Court and the Appellate Court. The following cases cover the question: *Avery* v. *Nordyke & Marmon Co.* (1905), 34 Ind. App. 541; *Wright* v. *Chicago, etc., R. Co.* (1903), 160 Ind. 583; *Davis Coal Co.* v. *Polland* (1902), 158 Ind. 607, 92 Am. St. 319, and authorities cited.