# INDIANA UNION TRACTION COMPANY *v.* SULLIVAN.

### [No. 7,834. Filed April 4, 1913.]

1. MASTER AND SERVANT.—*Injury to Servant.—Complaint.—Evidence.*—In an action against an electric railway company for injuries caused by an electric shock to an employe in charge of machinery installed in a car which defendant was using as a temporary substation, where the complaint averred generally defendant's failure to use reasonable care to provide plaintiff a reasonably safe place to work, and also averred negligence in placing two insulated wires along the ceiling of the car and connecting with a switchboard at one end thereof and with high-tension wires at the other, it was not error to permit a witness for plaintiff to testify that the wires ought to have been brought into the car at the end thereof nearest to the transformers, since such evidence tended to prove a lack of reasonable care and was therefore within the issues. p. 243.

2. APPEAL.—*Questions Reviewable.—Instructions.*—Unless instructions are brought into the record by one of the modes prescribed by statute, they will not be considered on appeal. p. 244.

3. APPEAL.—*Record.—Questions Presented for Review.—Instructions.*—Where the instructions of the appellee and appellant and those given by the court appeared in the order named, following a record entry that "the argument of counsel having been heard, the court having given the instructions, which instructions given and those refused are by order of the court filed in open court and are in the words and figures following," and the instructions of the appellee, as well as those of appellant, were headed by a request properly signed, and at the close contained the memorandum of the court showing those that were given and those refused, followed by the exceptions properly taken and signed, and the court's instructions were properly signed and the exceptions thereto properly taken, the instructions were in the record in substantial compliance with §561 Burns 1908, Acts 1907 p. 652. p. 244.

4. MASTER AND SERVANT.—*Injury to Servant.—Instructions.—Assumption of Risk.*—In an action against an electric railway company by one who was employed to care for machinery in a car used by defendant as a temporary substation to recover for injuries from an electric shock caused by alleged defective wiring,

an instruction which, when read in its entirety, limited the right to recover in such cases to those injuries resulting from the employer's failure or neglect to disclose hidden or latent and unseen defects or perils, the risk of which is not assumed by the employe, and which by implication informed the jury that it was not the master's duty to protect the servant against dangers reasonably and fairly incident to and within the ordinary risk of the services which he has undertaken, was not erroneous, although not entirely free from criticism. p. 245.

5.   MASTER AND SERVANT.—*Injury to Servant.—Instructions.—Safe Place to Work.*—While the statement in an instruction that "the defendant is required to furnish its employes with a suitable and ordinarily safe place in which to perform their duties" is not technically correct and is open to criticism, the defect was harmless, since, when considered in the light of the other instructions, the jury must have understood therefrom that the place of work must be ordinarily safe when considered with reference to the character of the work required. p. 247.

6.   MASTER AND SERVANT.—*Safe Place to Work.—Care Required.*— In furnishing the employe a place to work, the master must use that degree of care and caution which ordinary prudence would dictate, taking into account the dangers and hazards of the service required and the usual and known methods of avoiding the same. p. 247.

7.   MASTER AND SERVANT.—*Injury to Servant.—Instructions.—Assuming Facts.*—In an action by the custodian of a car, used by defendant as a temporary substation for its electric railway, for injuries received from an electric shock alleged to have been caused by defective wiring, an instruction which in effect told the jury that if it finds that there was a safe way in which defendant, without any great additional expense or interference with its business, could have connected its high tension wires with its transformers, it was its duty to choose such safe way rather than the unsafe one, was erroneous in that it assumed that the way in which the wiring had been done was dangerous and that the same had been negligently done. pp. 248, 250.

8.   NEGLIGENCE.—*Jury Question.*—The question of negligence is ordinarily one of fact for the jury, but the court may, where the facts admit of no other inference, tell the jury that if it finds that such facts were proved, negligence may be inferred therefrom. p. 250.

From Tipton Circuit Court; *Leroy B. Nash,* Judge.

Action by Ruel G. Sullivan against the Indiana Union Traction Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*James A. Van Osdol, Louis B. Ewbank, Kittinger & Diven*
and *J. R. Coleman,* for appellant.
*Ellis & Ellison,* for appellee.

HOTTEL, J.—This is an action for personal injuries sustained by appellee while in the employ of appellant and alleged to have been caused by the escape of electricity from appellant's high voltage wires. The complaint is in one paragraph and states in detail facts showing that appellant is a corporation engaged in the business of operating a system of street and interurban railroads; that for such purpose it produces, carries and stores electric currents; that a uniform supply along its various lines is maintained by stations and substations, located at points distant from its central power station; that on and prior to November 12, 1907, defendant conducted one of said substations at the town of Lafontaine, in Wabash County, Indiana; that plaintiff was employed as tender for said station, his duties being to clean and look after certain machines and switchboards therein; that a few days prior to said date the defendant for the purpose of making some changes and repairs at said station, placed a car upon a side track in close proximity thereto and equipped such car with a switchboard and necessary appliances to use temporarily as a substation; that an electrical current of 500 to 700 volts could be and was then being carried and conveyed by means of insulated wires in such a way that a person being in close proximity to such wires would not be shocked or injured; that a wire charged with voltage of anything above 1,000 volts insulated in the regular way was extremely dangerous to those near or about the same. "That the defendant was negligent and careless in placing said car at said point for said purpose in this, that the same was too small and of not sufficient height of ceiling to enable a person having charge thereof to perform his duties with reasonable safety under the circumstances; that it negligently and carelessly placed and equipped two insulated wires along

the ceiling of said car and connected the same at one end with its switchboard and equipment in said car, and at the other end with high tension wires carrying a voltage of 3,000 to 3,500 volts, and so attached as to charge said wires in said car with said high voltage; that said wires were so placed as to be in close proximity to the head of the person who would perform the duties of tender in said car; that after its wires were so placed and connected the defendant negligently and carelessly ordered the plaintiff to enter and take charge of such car and to clean the machinery therein, and required him to be in such parts thereof as would bring his head in close proximity to said heavily charged wires, and needlessly and unnecessarily exposed him to great danger of life and limb by being burned and shocked by the electricity in said wires; that the defendant negligently and carelessly failed and neglected to use reasonable care to provide the plaintiff with a reasonably safe place to perform his duty as aforesaid, and negligently and carelessly equipped said car as aforesaid, and negligently and carelessly used said car for said purpose, the same being too small and too low for said purpose, and negligently and carelessly ordered, directed and required the plaintiff to clean said machinery and perform his duties in said car and in close proximity to said wires as aforesaid, and negligently and carelessly failed and neglected to notify or apprise plaintiff or give him any notice or warning whatever of the dangerous character of said wires and surroundings; that the plaintiff, in obedience to said order, and demand of defendant and in the line of his duty under said employment, did on November 9, 1907, enter said car and proceed with his duties as tender thereof, and while cleaning the machinery and appliances therein, where he was so ordered, directed and required to be, was then and there, by reason and on account of the said negligence and carelessness of the defendant, greatly burned, shocked and injured by said electric current.'' The complaint contains the necessary averments

with reference to appellant's knowledge and appellee's lack of knowledge of the manner of the equipment of the car and the dangers to which appellee was exposed by being required to work therein.

A demurrer to this complaint was overruled and the issues closed by a general denial. A trial by jury resulted in a verdict for appellee in the sum of $3,500, with which was filed answers to a number of interrogatories. A motion for a judgment on such answers and a motion for a new trial were each overruled and exceptions saved. The ruling on each of these motions is assigned as error and relied on for reversal.

The sufficiency of the complaint is not here questioned and it is conceded by appellant that "under the extreme rule" applied in this court there is evidence tending to support its allegations, but it is insisted that a part of this evidence was outside the issues, and that error was committed in its admission. One of appellee's witnesses was asked the following question "I will ask you if this car of which I have described with the rotary in one end the transformers in the other is run up along the side of a regular relay station from which it receives the current of over 16,000 to 26,000 volts; what would be the modern and approved manner of equipping the car as to the end of the car, for safety that wires should be brought in?  *  *  * Tell which end of the car the wires should be brought in?" and the witness was permitted to answer: "The wires should come in the end of the car closest to the transformers." Objections were made by appellant to this question which were overruled and exceptions properly saved. A motion was also made to strike out the evidence which was also overruled and exceptions saved. The complaint expressly avers that the "defendant negligently and carelessly placed and equipped two insulated wires along the ceiling of said car and connected the same at one end with its switchboard and equipment in said car, and at the other end with high

tension wires.'' We think this averment entitled the appellee to any evidence that might tend to prove that appellant was careless and negligent in the placing of said high tension wires. It will also be observed from the averments of the complaint above set out that it contains the general averment that the appellant ''negligently and carelessly failed and neglected to use reasonable care to provide the plaintiff with a reasonably safe place to perform his duty.'' Under this general averment, any evidence which would prove or tend to prove such lack of reasonable care was admissible. The evidence complained of tended to prove such lack of reasonable care, and was therefore within the issues.

Alleged error in giving and refusing certain instructions is next urged. We are here met with an earnest insistency by appellee that the instructions are not in the record and that any error predicated in the giving or refusal to give any of them is therefore unavailable on appeal. It is too well settled to need the citation of authority that, unless the instructions are brought into the record by one of the modes prescribed by statute, they will not be considered on appeal. Appellee contends: (1) that the record fails to show a filing of the instructions; (2) that it is not shown that all the instructions given and refused are in the record. The following is a part of the record entry on the subject: ''The argument of counsel having been heard, the court having given the instructions, which instructions given and those refused are by order of the court filed in open court and are in the words and figures following:—'' Immediately following this entry are the instructions of appellee and appellant and those given by the court in the order named. At the beginning of appellee's instructions is his request that they be given, properly signed by (his) attorneys. There is also, at the beginning of appellant's instructions, a request that they be given, signed by its attorneys. At the close of appellee's instructions is a memorandum as follows: ''Of

the above and foregoing instructions tendered and requested by the plaintiff, those numbered 1, 2, 3, 4, 5, 6 and 7 are refused and those numbered 8, 9, 10, 11, 12 and 13 are given by the court this March 18, 1910. Leroy B. Nash, Judge Tipton Circuit Court. And to the giving by the court of the above and foregoing instructions requested and tendered by plaintiff, those numbered 8, 9, 10, 11, 12 and 13 and each of them severally, the defendant objects and excepts, this 19th day of March, 1910. J. A. Van Osdol, W. A. Kittinger, J. R. Coleman, Attys. for Defendant.'' A like memorandum appears at the close of appellant's instructions except the modification necessary to make it apply to its instructions and except also that the exceptions taken are signed by appellant's attorneys. The court's instructions are properly signed by the judge, and appellant's exceptions thereto, noted and signed by appellant. We think we have indicated enough of the record to show that the instructions are brought into the record in this case by a substantial compliance with both the letter and spirit of §561 Burns 1908, Acts 1907 p. 652, and the decisions of the Supreme Court and this court construing such section.

4. Complaint is made of instruction No. 12 given at appellee's request. This instruction is as follows:

''The defendant is not an insurer of its employees against injury, nor does it covenant to supply a place for them to work in that is safe beyond a peradventure or contingency, *but, notwithstanding this, the defendant is required to furnish its employes with a suitable and ordinarily safe place in which to perform their duties* in order to perfrom the duties required of them and an ordinarily suitable place in which to prosecute their work, and an employee has a right to repose confidence in his employer that he has exercised proper prudence and caution in providing him such an ordinarily safe place in which to perform his duties and rely upon the safety of the place assigned to him and *where an employee, thus relying, receives injuries in consequence*

*of the failure or neglect of the employer to disclose to him hidden or latent and unseen defects or perils which the employer knew or which he should have known by the exercise of reasonable prudence and where an employee is without fault or negligence on his part, the employer must respond in damages for any injury thus sustained.* The employer especially acknowledges that he will not expose the employee to danger which is not obvious or of which the latter *has no knowledge or adequate comprehension, and which is not reasonably fairly incident to and within the ordinary risk of the services which he has undertaken.* And if you find, from a preponderance of the evidence in the case, that the defendant, the Indiana Union Traction Company, *failed to perform its duties thus defined toward the plaintiff, and as a result of such failure of duty on its part the plaintiff,* while engaged in his duties toward the defendant, was injured, as averred in his complaint, *as a result of a hazard which was not open and apparent to him and which was unknown by him at the time and without fault or negligence on his part, then the defendant would be liable to the plaintiff for such injury, and your verdict should be for the plaintiff.''* It is insisted that this instruction attempts to state under what circumstances the master is liable for actionable negligence and upon the hypothesis therein stated directs a verdict for appellee, and that it omits the element that ''the servant assumes those incidental dangers of which he knew or by the exercise of ordinary care could have known.'' We think the words of the instruction which we have italicized, answer this objection. These words, by implication, inform the jury that it is not the master's duty to protect his servant against dangers ''reasonably and fairly incident to and within the ordinary risk of the services which he has undertaken,'' and, the instruction, when read in its entirety, limits the right to recover in such cases to those injuries resulting from the failure or neglect of the employer to disclose *hidden,* or

*latent* and *unseen* defects or perils, the risk of which is not assumed by the servant, under his contract of employment. The instruction, in some of its parts, is not entirely free from the criticism which appellant makes, but when read in its entirety, we think states the law in accord with the authorities. *Wabash, etc., R. Co.* v. *Morgan* (1892), 132 Ind. 430, 31 N. E. 661, 32 N. E. 85; *Indianapolis Traction, etc., Co.* v. *Holtsclaw* (1908), 41 Ind. App. 520, 527, 82 N. E. 986; *Columbian Enameling, etc., Co.* v. *Burke* (1906), 37 Ind. App. 518, 522, 77 N. E. 409, 117 Am. St. 337.

Objection is also made to that part of the instruc-
5. tion which tells the jury that "the defendant is required to furnish its employes with a suitable and
6. ordinarily safe place in which to perform their duties." This statement is not technically correct and is open to criticism. What might be an ordinarily safe place to work in one line of business would not be ordinarily safe in another line of business. The rule as generally stated is that "the master must exercise reasonable care and diligence to provide his servants with a safe place in which to work." *Indianapolis Traction, etc., Co.* v. *Holtsclaw, supra,* 527; *Cleveland, etc., R. Co.* v. *Snow* (1906), 37 Ind. App. 646, 652, 653, 77 N. E. 908; *Pittsburgh, etc., R. Co.* v. *Adams* (1886), 105 Ind. 151, 162, 5 N. E. 187; *Bedford Quarries Co.* v. *Bough* (1907), 168 Ind. 671, 689, 80 N. E. 529, 14 L. R. A. (N. S.) 418.

The effect of this rule is to require the place of work to be ordinarily safe for the employes when considered with reference to the character of the work required of them, and we think this was the meaning intended by the instruction and that it was so understood by the jury. The safe rule, however, is to qualify or indicate the care to be used in providing the safe place of work rather than to qualify the place of work as was done in this instruction. The master in such cases must exercise that degree of care and caution which ordinary prudence would dictate, taking into account

the dangers and hazards of the service required and the usual and known methods of avoiding the same. *Jenny Electric Mfg. Co.* v. *Flannery* (1913), *post* 397, 98 N. E. 424, 428. This degree of care and caution would doubtless result in an "ordinarily safe place of work" when reference is had to the character of the service required. The instruction omits the qualifying words above indicated and therein affords a reason for just criticism. However, we are inclined to believe that when the instruction is considered with all the other instructions given in the case, that the jurors were not misled thereby and that they understood it as having the meaning above indicated.

Complaint is also made of instruction No. 13 given 7. at appellee's request, which is as follows: "While the defendant is not an insurer against accident for injury to its employees, yet I instruct you that if you find, from a preponderance of all the evidence, that the plaintiff was employed to work for the defendant in its substation at Lafontaine, Indiana, then I instruct you that it was the duty of the defendant to exercise reasonable care and prudence in providing the plaintiff with a safe place in which to perform his duties under said employment, and this duty of the defendant is a continuous one, through all of plaintiff's said employment; and if you find, from a preponderance of all the evidence, that the defendant while attempting to repair its regular substation at said town of Lafontaine, ran one of its cars upon the side track or switch at said town, and attempted to equip the same with machinery and appliances and switch boards necessary for the purpose of using the same as a temporary substation at said point, then I instruct you that it was the duty of the defendant in doing so to exercise reasonable care and precaution in the manner and method in which the appliances and equipments of said car were arranged for the safety of those who were required to work in said temporary substation; and if you find, from a preponderance of all the evidence, that the defendant, in

equipping said car for said purpose *could have placed its high tension wires through the other end of the car from which it did place them and thereby brought down its wires at said end of said car to the transformers in said car* an'd thereby avoided having said wires placed the length of said car overhead and under the ceiling thereof, and if you further find that the same could have so been done *without any great additional expense or interference with defendant's business in said substation,* and that thereby the rotary in the opposite end of said car (if you find said rotary was in opposite end of said car) could have been safely cleaned and put in condition without exposing the plaintiff to hazard or danger from said wires while cleaning said rotary, *then I instruct you that it was the duty of the defendant to take said precaution and so place said wires* at said end of said car so that the danger to the plaintiff, if any, while working in said car, about said rotary, could have been avoided, and if you find, from a preponderance of the evidence, that the defendant did not exercise reasonable care and precaution in so placing said wires, and as a result of said neglect on the part of the defendant, the plaintiff was injured, as averred in his complaint, by reason of the current escaping from said wires and coming in contact with this plaintiff, which danger and hazard was unknown to the plaintiff and could not have been discovered by him, by the exercise of ordinary care and prudence, and that he was injured without any negligence or fault on his part, then the defendant would be liable to the plaintiff for any injury so received, and your verdict should be for the plaintiff.'' It is insisted that this instruction told the jury, in effect, that it was the duty of the defendant ''to have placed its high tension wires through the other end (of the car) from which it did place them,'' and that in this respect the instruction was outside the issues. What we have already said with reference to the averments of the complaint on this subject and the admission of the evidence thereunder, disposes of this ob-

jection. It is next urged that this instruction invaded the province of the jury in attempting to tell it as a matter of law that it was appellant's duty to wire its car in the particular manner indicated by the instruction. Ordinarily, negligence is a question of fact for the jury to determine from the evidence and not for the court to declare as a matter of law. *Pennsylvania Co.* v. *Hensil* (1880), 70 Ind. 569, 575, 36 Am. Rep. 188; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39, 49, 34 N. E. 714; *Louisville, etc., Traction Co.* v. *Korbe* (1911), 175 Ind. 450, 93 N. E. 5, 94 N. E. 768; *City of Franklin* v. *Harter* (1891), 127 Ind. 446, 450, 26 N. E. 882; *Chicago, etc., R. Co.* v. *Martin* (1903), 31 Ind. App. 308, 315, 65 N. E. 591; *Saylor* v. *Union Traction Co.* (1907), 40 Ind. App. 381, 386, 81 N. E. 94. The court may, however, assume certain facts within the issues and in support of which there was some evidence and where the facts so assumed to exist admit of but one inference, and that inference is one of negligence, the court may tell the jury that if it finds such facts to be proven by the evidence, it may infer negligence. The instruction complained of tells the jury, in effect, that if it finds that there was a safe way in which the appellant, without any great additional expense or interference with its business, could have connected its high tension wires with its transformers, that it was its duty to choose such safe way rather than the unsafe one. The instruction is subject to the charge that it in effect assumes that the way in which the wire was brought into the car and run along the top thereof was dangerous, and that appellant had not used reasonable diligence and care in placing it so as to make it safe. This court, in the case of *Jenny Electric Mfg. Co.* v. *Flannery, supra,* held that "whether the doing of a certain act, or the failure to do it, in a particular way constitutes due care, or the want of such care, should generally be left to the jury in the light of the evidence. It is only in cases where the facts are undisputed, and where

Indiana Union Traction Co. *v.* Sullivan—53 Ind. App. 239.

only a single inference can be reasonably drawn therefrom, that the court can say, as a matter of law, that a certain course of conduct does or does not constitute reasonable care. 'It is only when the standard of duty is fixed and certain, or where the negligence is so clear and palpable that no verdict could make it otherwise, that the question of negligence becomes one of law and not of fact.' " To the same effect is the case of *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545, 46 Am. Rep. 230. It is clear, under these authorities, that the court in instruction No. 13 above, invaded the province of the jury, unless this court can say that, under the facts of this case, appellant's negligence in the matter of placing its wires in its car in the manner in which it did "was so clear and palpable that no verdict could make it otherwise." Expert evidence was offered by appellee to the effect that the wires should have come in at the end of the car closest to the transformer, but we are not able to say that from this evidence we must necessarily infer that appellant was negligent in taking its wires into said car at the other end thereof. Other objections are urged to this instruction, but inasmuch as the one already pointed out necessitates a reversal of the case the others need not be discussed.

It is also urged that the damages are excessive and that the trial court erred in overruling the motion for judgment on the answers to interrogatories but the conclusion already reached makes unnecessary a discussion of these questions. Judgment reversed with instructions to the court below to grant a new trial.

NOTE.—Reported in 101 N. E. 401. See, also, under (1) 26 Cyc. 1405; (2) 3 Cyc. 170; (3) 2 Cyc. 1046; (4) 26 Cyc. 1503; (5) 26 Cyc. 1491, 1497; (6) 26 Cyc. 1102; (7) 26 Cyc. 1497; 38 Cyc. 1671; (8) 29 Cyc. 645. As to rule of assumption of risk, also as to master's statutory duty to furnish servant safe place to work in and safe appliances, see 131 Am. St. 437. For servant's assumption of risk of danger imperfectly appreciated, see 4 L. R. A. (N. S.) 990. As to assumption of risks of dangers created by the master's negligence, which might have been discovered by the exercise of ordinary care on the part of the servant, see 28 L. R. A. (N. S.) 1250.